**UNITED STATES, to Use of UNION GAS ENGINE CO., v. NEWPORT SHIP-BUILDING CORPORATION, Limited, et al.**

Circuit Court of Appeals, Fourth Circuit.

April 12, 1927.

No. 2553.

**1. United States ⟨⟩67(3)—Date when final payment to government contractor was authorized held "date of final settlement," as limiting time for suit on contractor's bond (Comp. St. § 6923).**

Date on which the United States authorized and directed final payment to contractor *held* "date of final settlement," as affecting time for subcontractor's suit on contractor's bond, executed under Act Aug. 13, 1894, as amended by Act Feb. 24, 1905 (Comp. St. § 6923).

**2. United States ⟨⟩67(3)—Whether time for suit on contractor's bond was extended by mistaken representation of final settlement date by government officer held not involved (Comp. St. § 6923).**

Subcontractor, instituting suit on government contractor's bond executed under Act Aug. 13, 1894, as amended by Act Feb. 24, 1905 (Comp. St. § 6923), more than a year after date of final settlement between government and contractor, *held* not to have made case requiring court to consider whether time for bringing suit could be extended by mistaken representation of government official as to date of final settlement.

In Error to the District Court of the United States for the Eastern District of North Carolina, at New Bern; Isaac M. Meekins, Judge.

Action by the United States, to the use of the Union Gas Engine Company, against the Newport Shipbuilding Corporation, Limited, and the National Surety Company. Judgment for defendants, and plaintiff brings error. Affirmed.

Edmund L. Jones and Thomas M. Fields, both of Washington, D. C. (Frank J. Hogan, of Washington, D. C., and Ward & Ward, of New Bern, N. C., on the brief), for plaintiff in error.

Larry I. Moore, of New Bern, N. C., and William Henry White, of Washington, D. C., for defendants in error.

Before ROSE and PARKER, Circuit Judges, and BAKER, District Judge.

ROSE, Circuit Judge. In the court below, the use plaintiff brought suit against the defendants upon a bond executed by them under the provisions of the Acts of August 13, 1894, 28 Stat. 278, and February 24, 1905, 33 Stat. 811 (Comp. St. § 6923). For brevity, the plaintiff in error, the Union Gas Engine Company, will be called the subcontractor, the defendants in error, the Newport Shipbuilding Company, Limited, and the National Surety Company, the contractor and the surety, respectively.

In the court below, the contractor and the surety, while denying liability, said that, in any event, the suit could not be maintained because it was not brought until more than one year after the performance and final settlement of the contract. The parties in writing waived a jury trial of the question of jurisdiction. The judge, after hearing the evidence, made certain findings of fact. They need not be set forth at length. It is not disputed that on September 28, 1920, the proper official representative of the United States approved a voucher dated on the preceding day for $23,372.40, less $5,000, or $18,372.40. It was then stated that the $5,000 would be retained pending the delivery of nine sets of spare propellers. Such sum of $23,372.40 was the total amount of the balance of the payments due from the government to the contractor. The spare propellers were delivered to the United States on or before February 21, 1921, by which time everything required of the contractor had been fully performed. On April 1, 1921, the United States authorized and directed the payment of a voucher for $5,000 as the balance due the contractor, which voucher set forth that the spare propellers had been delivered on February 18, 1921. On April 16, 1921, this $5,000 was paid to the contractor under the authority and direction of the voucher just mentioned. The suit was not brought until April 8, 1922. Under these circumstances the learned District Judge held that it had not been instituted in time and must therefore be dismissed.

The subcontractor assigns many errors, but in substance they resolve themselves into two contentions: First, that April 16, 1921, was the true date of performance and final settlement; and, second, that the representation made to it by those acting for the United States that such was the true date, are binding upon the contractor and the surety, and for the purposes of this action must be accepted as accurate.

[1, 2] The date of final settlement, as that term is defined in Illinois Surety Co. v. Peeler, 240 U. S. 214, 36 S. Ct. 321, 60 L. Ed. 609, was certainly not later than April 1, 1921, and, as the suit was not brought until one year and seven days thereafter, it becomes unnecessary to follow the parties into their discussion as to whether a final settlement was not made at some earlier date, as for example on September 28, 1920, when the amount which would be due to the con-

tractor as soon as satisfactory spare propellers were furnished was ascertained to be $23,372.40, although $5,000 of that amount was to be retained by the government until such propellers were supplied. On behalf of the surety, reliance on this point is put upon such cases as United States v. Arnold (D. C.) 268 F. 130; United States v. Robinson (C. C. A.) 214 F. 38; Arnold v. United States (C. C. A.) 280 F. 338. On the other hand, any subcontractor who furnished the spare propellers to the contractor would ordinarily be entitled to rely upon the bond, and he, of course, could not sue upon it until he had supplied the propellers to the contractor, and that might conceivably be more than a year after the date of the ascertainment of the amount to be paid the contractor when and after the propellers were delivered. The debate is interesting, but we are not now called upon to contribute to it.

The conclusion that the final settlement within the meaning of the law was made at least as early as April 1, 1921, narrows not a little the scope of the inquiry raised by the second contention of the subcontractor. We need not concern ourselves with what the officers of the War Department said or did not say with reference to any date earlier than April 1, 1921.

On March 17th of that year the attorney for the subcontractor wrote to the Quartermaster General. In this letter it was in effect said that the contractor owed the subcontractor upwards of $125,000 which had been overdue for more than six months, that the contractor was judgment proof, and that the subcontractor was compelled to resort to an action against the surety. It was explained that such a suit could not be brought until after the expiration of six months from the completion and final settlement of the contractor's account, that such settlement does not mean final payment, but is the final administrative determination by the proper authority of the amount due; that is to say, so far as concerns the matter in hand, the date of final settlement would not be when final payment was made by the United States to the contractor, but would be the date of the final determination by the War Department of the amount due. Attention was called to the fact that the War Department's letter of January 26, 1921, showed that the final settlement of the contract involving more than $2,000,000 had been postponed for months on account of the failure of the contractor to deliver nine sets of spare propellers for which the United States had retained $5,000. It was added that, under the stat-

ute, it was necessary that the contract be both completed and final settlement, authorized at least six months before a supply creditor could sue upon the bond, lacking any action in the meantime by the United States. The letter closed with a request that the War Department should promptly complete the contract at the cost of the contractor, and should immediately thereafter determine the amount due to or from it, in order that the then present insuperable obstacle confronting the subcontractor and the other supply creditors might be removed.

Two weeks later, on March 31st, the Quartermaster General answered "that it is anticipated final settlement can be effected on this contract within the next day or two. As soon as advice is received from the Atlanta office as to the actual settlement, you will again be advised as to the exact date of such settlement." On the 25th of April, the Quartermaster General again wrote, in "further reference to conversation" "regarding final settlement by this office with the" contractor, that "final payment was made by the Quartermaster General, 4 Corps Area, Ft. McPherson, Ga., on April 16, 1921." The reference to a "conversation" is explained by a witness who was acting for the counsel of the subcontractor, and who testified that some days after the receipt of the letter of March 31st from the Quartermaster General he called upon Col. Anderson, who by direction of the Quartermaster General had signed the letter, and told him that what the subcontractor wanted was information as to the date a final determination as to the amount to be paid was reached. Col. Anderson replied that the contract period of the contractor had expired, the matter of the amount of settlement would have to go through the auditor for the War Department. This witness says that the last time he talked with Col. Anderson, prior to the letter of April 25, 1921, already referred to was a few days before that letter was received, and Col. Anderson then stated that the contract had been finally settled and that final payment had been made, and that he would write "us to that effect in order that we might use his letter in connection with the suit which we intended to bring on the bond." A deposition of Col. Anderson was taken. In it he said he was the officer having authority to make and who did make the final administrative determination of the time when the contract was completed and when the final amount was due; that his decision on April 1, 1921, that the $5,000 should be paid closed the matter except for

the clerical work of preparing the check. He testified that settlement and payment meant all the same to him. It is quite obvious that the written and oral efforts of the attorney for the subcontractor, prior to April 25, 1921, to make clear to Col. Anderson that there was a distinction between the two, had profited naught. It may be stated that as early as the preceding January, the government had furnished the counsel for the subcontractor with a copy of the contract and bond. Many of the documents produced in evidence, and much of the oral testimony, were objected to by one side or the other. The subcontractor says that the learned court below erred in overruling the objection made by it. It does not seem to us that the result could be affected by the letting in of any of the testimony to the admissibility of which there can be any serious question, and we need not decide whether there was any of it to which a technical objection was sustainable.

As we see it, the case for the subcontractor in its ultimate analysis rests upon two assumptions: First, that the letters from the Quartermaster General were a distinct assertion by the officer of the United States acting in the premises, that final settlement was not reached until April 16, 1921; and, second, that such assertion is binding, not only upon the government, but upon the contractor and its surety as well. The principal authority relied on in support of the second of these assumptions is the well-considered opinion of the Circuit Court of Appeals for the Third Circuit in American Bonding Co. v. United States, 233 F. 364, and subsequently cited with approval by the Circuit Court of Appeals for the Ninth Circuit. Pedersen v. United States, 253 F. 622.

In the American Bonding Company Case, the court thought that there was much reason to hold that August 9, 1913, was the earliest date at which it could be said a final settlement had been reached. The suit was brought on the fourth of the succeeding February; that is, within less than six months. It, however, appeared that, in answer to the inquiries of various subcontractors, the Treasury Department of the United States wrote "that final settlement" "was authorized August 2, 1913." Moreover the contract was officially indorsed, "Final payment authorized August 2, 1913." In its opinion the court quoted extensively from the then recently decided case of the Illinois Surety Co. v. U. S. Use of Peeler, supra. It pointed out that it was there said that the prohibition of suit by any one other than the Unit-

ed States for the six months next following upon final settlement was to assure "to the United States adequate opportunity to enforce its demand against the contractor's surety, and priority with respect to such demand." The Court of Appeals then said that the precise question before it was whether the Department should be held to the date on which it actually stated the terms of the settlement, or "whether it might adopt the earlier date on which the settlement was recommended by the proper official." "We see," it said, "no sufficient ground for confining the government to the later date. If, for reasons of convenience or for any other administrative reason, the Department sees proper to adopt the date of recommendation —and especially if it furnish that date to others, who act upon the information as true—we perceive no principle that calls upon the court to set the Department's action aside. On the contrary, we see no objection to allowing the government a discretion in this matter. The essential thing is that some date shall be fixed, so as to do away with the need of further inquiry, and to make it easy to ascertain merely from the Department's record just when the six months' period will expire. *Unless adverse rights should require the date of actual signing to be ascertained,* we think the Department's own choice may safely be accepted as a final decision of the question. It is not irrelevant to observe that, *unless adverse rights be involved,* the formal date of a deed or a mortgage is continually accepted as the time when the instrument takes effect, in spite of the fact that a later date is in truth the time when the instrument was actually executed." The italics are ours.

In the instant case the trouble is that adverse rights are involved in a sense in which they were not in that passed upon by our brethren of the Third Circuit. It is true that there it was the surety who objected that the suit was brought too soon, as it is the surety who tells us that the case before us was instituted too late. Either objection, if sound, required the dismissal of the action, and such dismissal in the earlier case conceivably might not have been ordered until after the expiration of the time in which a new suit could have been validly brought. But such a result, however probable, was after all a mere chance. If the point that the suit was prematurely brought had been promptly made and sustained, the surety would have gained nothing more valuable than a trifling delay. The requirement that suit cannot be brought in the six months

next following the final settlement is not for the protection of the surety but for that of the government, as both the Supreme Court and the Circuit Court of Appeals of the Third Circuit have pointed out in the cases already cited. On the other hand, the proviso that the suit shall be brought within a year from the settlement or not at all is for the benefit of the surety and as a practical matter for its benefit alone.

We therefore understand the qualification which the court of the Third Circuit was at pains to make, viz. "unless adverse rights should require the date of actual inquiry to be ascertained," to be directed to such a situation as that upon which we are now called upon to pass. It is persuasively argued that the ordinary subcontractor, who may live and work at Eastport, Seattle, San Diego, or Key West, and who has a claim of a few hundred of dollars at the most, must perforce accept as final any date the Washington Department gives him. As a practical matter, he is in no position to exercise the theoretic right which the surety says he has to rummage through the Department files, and, from what he finds there, to reach his own conclusion, as to the precise date upon which the final settlement was made, even if such an examination would always be permitted by the officials actually in charge. On the other hand, it is quite possible that some departmental official, as a result of a misunderstanding of the law or a mistake as to facts, may tell a subcontractor that a final settlement had not been made until months or years after it had been. Would that blunder of a government employee bind the surety and subject it to suit long after the date from which Congress had said it should be immune? Nor would it certainly follow that the laying down of such a rule would in practice insure certainty as to the date from which all parties must figure that a final settlement has been made. It is quite possible that one official might give one date to one party in interest and his colleague or successor another to some one else equally concerned. The Third Circuit has held that the government's communicated determination of the date at which the final settlement was made is conclusive that a suit instituted six months thereafter has not been brought too soon, because, as that lapse of time is provided for its security, it is bound by the date it gives. The subcontractor in effect argues that we shall hold the law to be that a suit is not brought too late if it be instituted within twelve months after the date at which the government official in

charge says the final settlement was reached. But we do not think that a government official, after making final settlement within the meaning of the statute, can, by his mere declaration, without the knowledge or consent of the surety, extend the time during which suit may be brought against the latter. Certainly there is nothing in the facts of the instant case which would justify such holding.

As already stated, the government had furnished the subcontractor with a copy of the contract and bond as early as January, 1921. On March 31, 1921, the subcontractor had been told that it was "anticipated final *settlement* can be effected" on the contract in question "within the next day or two." Such settlement was actually made on the "next" day. On April 25th another official letter gave it the information that "final *payment*" was made on April 16th. The italics are ours. It is true that the learned assistant to the counsel for the subcontractor testifies that at some time between April 16th and April 25th he talked with Col. Anderson and had been told that final settlement and payment had been made, and that he would put that statement in writing so that the subcontractor might use it in connection with its proposed suit. The professional gentleman who was acting for the subcontractor was, as his correspondence and testimony show, well aware that the date of final settlement might precede that of final payment. He was in direct personal touch with Col. Anderson. It does not appear that he ever asked permission to see the papers in which settlement had been determined. We are not justified in assuming, to the prejudice of the surety, that such permission would have been refused. With full knowledge that on March 31st final settlement was expected within a day or two and that final payment was made on April 16th, and without seeking to look at the original papers, he or the subcontractor for whom he was acting chose, before bringing suit, to wait eleven months and twenty-two days after final payment was made. We are aware that it is said the delay was in the reasonable hope that a compromise would be effected, a consummation ordinarily devoutly to be wished; but even so, if the subcontractor chose to cut its corners so closely, we think it should have first made itself more certain than it did of the precise boundaries of time within which at its peril it was required to move. There is no suggestion in the record that it was lulled to sleep by anything done or left undone by the contractor and its surety or by either of them. Under the cir-

cumstances, we do not think the subcontractor has made out such a case as requires us to consider whether the time in which a surety is liable to suit can ever be extended by the mistaken representation of a government official as to the date of final settlement; it not appearing that such representation was made with the knowledge or consent of the surety.

In short, we hold that the date of final settlement was not later than April 1, 1921, and that the suit was not brought until more than twelve months thereafter, and that no sufficient reason for not bringing it within the statutory period has been given, if any such reason ever could exist, as to which we intimate no opinion.

It follows that the judgment below was right and must be affirmed.

The above opinion was prepared by Judge ROSE before his death, and concurred in by the other members of the court.