## COMMONWEALTH OF PENNSYLVANIA to Use of GENERAL CRUSHED STONE CO. v. ÆTNA CASUALTY & SURETY CO.

### No. 4990.

Circuit Court of Appeals, Third Circuit.

March 2, 1933.

Fox & Fox and Edward J. Fox, all of Easton, Pa., and A. C. Campbell, of Wilkes-Barre, Pa., for appellant.

John V. Lovitt and Frederic L. Ballard, both of Philadelphia, Pa., and Clarence Balentine, of Scranton, Pa. (Ballard, Spahr, Andrews & Ingersoll, of Philadelphia, Pa., of counsel), for appellee.

Before BUFFINGTON and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In this case it appears the Reitz Construction Company (hereafter called Reitz) contracted with the commonwealth of Pennsylvania (hereafter called state) to build a highway. The Ætna Casualty & Surety Company, a corporate citizen of Connecticut (hereafter called Ætna), became surety on a bond given by Reitz to state for the fulfillment of such contract. Reitz failed, and Ætna, undertaking completion thereof, contracted with the Juniata Company (hereafter called Juniata) to fulfill Reitz' contract. To enable Juniata to complete the road, the General Crushed Stone Company (hereafter called stone company) a corporate citizen of Delaware, furnished $26,471.43 of material to Juniata, which was used by Juniata, Ætna's agent, in fulfilling the breached contract. Juniata paid stone company $12,840.46, leaving unpaid $13,630.97. For this latter sum stone company, on January 24, 1930, brought suit in a state court on the bond in the name of the commonwealth of Pennsylvania, to the use of the General Crushed Stone Company, against the Ætna Company. The record was removed to the court below on March 5, 1930. The case turned on the construction and application to the facts of this case of section 13 of the Pennsylvania Act of May 16, 1921, P. L. 650, 653 which provides:

"Section 13. All work of construction, building, or rebuilding of highways, excepting that of repairing and maintenance, done under the provisions of this act, may be by contract, and shall be according to plans and specifications to be prepared in every case by the State Highway Department; and, in awarding any contract, the work shall be given to the lowest responsible bidder, with the option on the part of the State Highway Commissioner to reject any or all bids, if the prices named for the work or materials to be used are higher than the estimated cost, or for any other reason appearing to said commissioner. Every person, firm, or corporation, before being awarded any contract for the construction or improvement of any State highway or State-aid highway under the provisions of this act, shall furnish a bond, with sufficient surety or sureties, acceptable to the State Highway Commissioner, in a sum equal to fifty per centum of the contract price of the work, conditioned that the contractor shall, well and truly and in a manner satisfactory to the State Highway Commissioner, complete the work contracted

for, and shall save harmless the Commonwealth of Pennsylvania from any expense incurred through the failure of said contractor to complete the work as specified, or *from* any damages growing out of the carelessness of said contractor or his or its servants, *and shall well and truly pay for all material furnished and labor performed in and about the construction of said highway; and any person, firm, or corporation who has furnished labor or materials used in the construction or improvement of any State highway or of any State-aid highway under the provisions of this act, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the Commonwealth of Pennsylvania on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the Commonwealth of Pennsylvania. If the amount of the liability of the surety on said bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the Commonwealth of Pennsylvania, the remainder shall be distributed pro rata among said interveners. If no suit should be brought by the Commonwealth of Pennsylvania within six months from the completion of said contract and final settlement with the Commonwealth, then the person or persons supplying the contractor with labor and materials shall, upon application therefor and furnishing affidavit to the State Highway Department that labor and materials for the prosecution of such work have been supplied by him or them and that payment for the same has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be and are hereby authorized to bring suit, in the name of the Commonwealth of Pennsylvania, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution. Where suit is instituted by any of such creditors on the bond of the contractor, it shall not be commenced until after the complete performance of said contract and final settlement thereof with the Commonwealth, and shall be commenced within one year after the performance and said final settlement of said contract, and not later. Where suit is so instituted by a creditor or creditors, no other action shall be brought by any other creditor, but any other creditor may file his claim in the action first brought and be made party thereto within one year from the completion of the work under said contract, and not* later. *If two or more actions be brought on the same day, the action in which the largest claim is demanded shall be regarded as the first action. Any creditor who has brought an action within one year as aforesaid, but after suit brought by another creditor or on the same day, may intervene in the suit first brought within the year, notwithstanding the fact that the intervention in such case be after the expiration of the year, provided said intervention be made within thirty days after the expiration of the year. If the recovery on the bond should be inadequate to pay the amounts found due to all of said creditors, judgment shall be given to each creditor pro rata of the amount of the recovery. The surety on said bond may pay into court, for distribution among said claimants and creditors, the full amount of the surety's liability, to wit, the penalty named in the bond, less any amount which said surety may have had to pay to the Commonwealth of Pennsylvania by reason of the execution of said bond; and, upon so doing, the surety will be relieved from further liability. In all suits instituted under the provisions of this act, such personal notice of the pendency of such suits, informing them of their right to intervene, as the court may order, shall be given to all known creditors, and, in addition thereto, notice shall be given by publication in some newspaper of general circulation, published in the county or town where the contract was performed, once a week for at least three successive weeks: Provided, however, That when such suit has been begun within three weeks of the end of the year within which suit may be brought, said notice by publication shall be only for the period intervening between the time of instituting such suit and the end of the year.*

"The State Highway Commissioner, however, is hereby authorized and empowered, in his discretion, to construct, build or rebuild by the agents, servants, and employees of the State Highway Department any highway or highways for the construction, building, or rebuilding of which he may contract under the provisions of this act."

It will be noted that such surety bonds are primarily for the protection of the state; that the state had the sole right to sue on the bond for six months "after the complete performance of said contract and final settlement thereof with the Commonwealth"; that, if there had been a "completion of said contract and final settlement thereof with the Commonwealth," and the state did not sue within said six months on the bond, then those supplying the contractor with labor and material

might sue in the name of the commonwealth. It will thus be seen that the act contemplated, to use its own words, two things: First, "the completion of said contract" and "the complete performance of said contract"; second, "final settlement with the Commonwealth." We here note that failure to recognize the two separate features, first, of completion of the contract, and, second, final settlement of the contract, has led to a confusion which has been increased by considering "final estimates" of work under the contract as the equivalent of the two specified statutory elements noted, viz. "completion" and "final settlement." Further confusion has come from considering formal estimates made of work done as the equivalent of the "final settlement" of the contract. Referring to the federal statute, which is substantially like the state one, the Supreme Court in Illinois Surety Co. v. United States to the Use of Peeler, 240 U. S. 218, 36 S. Ct. 321, 323, 60 L. Ed. 609, said: "The pivotal words are  ⋇  ＊  ＊ 'final settlement.'"

Now, what are the facts in this case? The field work done by Reitz and Juniata under the contract was estimated by the field engineers and then sent to the highway department at Harrisburg for checking. It was then returned to the division engineer at Scranton, who on March 24, 1928, sent a letter to the chief engineer at Harrisburg. This the court below held was the final settlement of the contract, saying:

"Payments on account of the said contract were duly made from time to time by the Commonwealth of Pennsylvania, until March 24, 1928, when the final estimate due the contractor was finally issued by the duly authorized and accredited agent of the Commonwealth of Pennsylvania for that purpose, showing a final estimate due thereunder of $4,070.96."

But the below quoted part of the letter clearly shows such was not the fact (the italics are ours): "Under separate cover we are returning to you *for your approval*, final estimate *data* applying on application 3770." The letter then goes on to give explanatory data as to why certain estimates, etc., were made and says:

"Although these quantities represent the final estimate on this contract, we are recommending that the estimate be treated as a *semi-final* and that $100.00 be retained in order to keep the final estimate open due to the fact that the Ætna Casualty and Surety Company contemplate making claim for maintenance of traffic after the roadway had been opened on this project also a claim for overpayment on monthly estimate to the original contractor on this project prior to the job being taken over by the bonding company. No payment to be made on this semi-final until checked by the Harrisburg Office.

"In accordance with my letter dated March 21, we will submit a further report concerning the latter claim on this project immediately after we receive a revised claim from the Ætna Casualty and Surety Company."

It will thus be seen that this "semi-final," far from being a final settlement, also noted the fact that Ætna, which now contends it was final, itself contemplated making claim for further allowances. This claim was subsequently made by Ætna under the provision of the contract for arbitration noted in the margin,[1] which arbitration, it will be observed, was the final unappealable settlement which Ætna invoked and which had the effect of postponing final settlement. The arbitration resulted in a rejection of Ætna's claim, and an award of $4,070.96 was made on January 26, 1929, and on January 31, 1929, the chief engineer's office transmitted the finding to the deputy secretary of highways, saying, *"Attached for your approval* is the final estimate on the contract of the Ætna Casualty and Surety Company." Following this, the department of highways then requested the auditor general that he cause Ætna to be paid the sum of $4,070.96, which, on February 4, 1929, he did, marking the estimate "settled," and issuing a warrant to the treasury department. A study of these proceedings, documents, letters, and entries, makes it clear that during all this time the "semi-final" status of the estimate and the adjustment and final settlement of the contract were in abeyance. Moreover, this was the view of the commonwealth, for on August 20, 1928, five months after the date of the final settlement as held by the court, in answer to an inquiry by the appellant, it telegraphed, "Final estimate D. S. Reitz Construction Company being held pending adjustment with surety." That the construction placed by the proper department on an administrative statute,

---

[1] "All questions or disputes arising between the parties hereto respecting any matter pertaining to this contract or any part thereof or any breach of said contract shall be referred to the Secretary of Highways and the Attorney General or First Deputy Attorney General of the Commonwealth of Pennsylvania, whose decision and award shall be *final*, binding and conclusive upon all parties without exception or appeal; and all right or rights of any action at law or in equity under and by virtue of this contract and all matters connected with it and relative thereto are hereby expressly waived."

while not binding, has persuasive weight with a court, has been held in several cases. Indeed, in our judgment, the present case is in line with the situation in Illinois Surety Co. v. United States, to the Use of Peeler, supra. There, as here, the construction work has been satisfactorily completed. There a question of all charge against the construction, and in favor of the government, for delay, was involved; here a question of allowance against the state for some $2,300 was made by the contractor. There the claim was by the government; here by the surety. There the claim was taken up by the chief architect and allowed in favor of the contractor; here the claim of the surety was arbitrated and decided against the contractor. There a voucher was ordered issued; here, after the arbitration, the account was audited by the auditor general and voucher ordered and issued by the state treasurer. We here note that the state statute (36 PS, Pa., § 121) provided: "The expense of the construction * * * of State Highways provided for in this act, when *properly certified* by the State Highway Commissioner, *shall be audited by the Auditor General, and when audited and allowed* shall be paid out of moneys specifically appropriated for this purpose, by warrants drawn therefor by the Auditor General upon the State Treasurer." On March 24, 1928, the date found by the trial judge, these statutory requirement steps, viz. "properly certified by the State Highway Commissioner," "audited by the Auditor General," "Warrants drawn therefrom by the Auditor General upon the State Treasurer," had not been taken. To hold there was a final settlement made without these statutory preliminaries and safeguards is to ignore the statute.

Such being the case, the judgment below is reversed, and the record remanded for due procedure in accordance with this opinion.