BOARD OF EDUCATION, UNION FREE SCHOOL DISTRICT No. 3, TOWN OF HUNTINGTON, SUFFOLK COUNTY, NEW YORK, to the Use and Benefit of the STICKLEY MANUFACTURING COMPANY, L. & J. G. STICKLEY, INC., Having Claims under a Certain Bond Dated February 4, 1939, and Numbered 677–856-A, the Parties to Said Bond Being TAPPEN & KATZ, INC., Principal, THE AMERICAN BONDING COMPANY OF BALTIMORE, Surety, and the BOARD OF EDUCATION, UNION FREE SCHOOL DISTRICT No. 3, TOWN OF HUNTINGTON, SUFFOLK COUNTY, NEW YORK, Obligee, Respondents, v. AMERICAN BONDING COMPANY OF BALTIMORE, Appellant.

Supreme Court, Appellate Term, First Department, June 27, 1941.

*Thomas E. White* [*William E. Robinson* of counsel], for the appellant.

*Costello, Cooney & Fearon* [*Richard Wathen Condon* of counsel], for the respondents.

HAMMER and SHIENTAG, JJ., concur; MILLER, J., dissents.

MILLER, J. (dissenting). This action was brought by materialmen, in the name of plaintiff board of education, to recover to their own use their claims upon a contractor's bond executed by defend-

ant, as surety, and Tappen & Katz, Inc., as principal. The bond permits such a form of action, and the board of education has consented to its maintenance.

On February 3, 1939, Tappen & Katz, Inc., made a contract with plaintiff board of education under which it agreed to supply and install for it certain furniture and equipment at the price of $9,046, to be paid in specified installments.

The contractor and defendant gave the board of education their joint and several bond in the penal sum of $9,046, conditioned, among other things, for the faithful performance of the contract and the payment of all materialmen of the contractor. The use-plaintiffs are unpaid materialmen who provided the contractor with materials which were incorporated in its work.

The defense interposed is that the action is barred by the following contractual limitation contained in the bond: " In no event shall the surety * * * be * * * subject to any suit, action or proceeding hereon that is instituted * * * later than six (6) months after the complete performance of said contract and final settlement thereof."

Work duly proceeded under the contract. On June 22, 1939, Tooker & March, the architects of the board of education, issued to it a certificate of completion. Six days later the board of education adopted a resolution which, after reciting the receipt of the certificate of completion, approved the contract of the contractor " as having been completed in full accordance with all approved contract documents." At this time the unpaid maximum amount claimable by the contractor was $904.61.

On August 21, 1939, the board of education drew two checks to the order of the contractor for, respectively, $198.60 and $186. Some time in the latter part of August, 1939, the board decided that only $795.35 was due and payable under the contract, on the ground that it was entitled to deduct from the unpaid balance of $904.60 the cost of rechromiuming certain mirrors furnished by the contractor. Accordingly, on October 9, 1939, the board drew its check to the order of the contractor for $410.75.

These three checks, representing the $795.35, which the board of education thus found to be due from it, were, however, never delivered to the contractor. Before the last check was drawn, on August 24, 1939, the contractor made a general assignment for the benefit of creditors. Prior thereto the contractor had assigned to one of the use-plaintiffs its claim to the balance of $904.60 alleged to be owing by the board of education.

The general assignee in October, 1939, sued to recover the $904.60. He claimed in that action that the assignment made to one of the use-plaintiffs constituted a void preference. The board of education admitted that $709.35 was due either to the contractor or to the materialmen, but denied any liability in respect of the balance of $109.25. Subsequently, a stipulation was entered into whereby the contractor assented to the board's deducting the said sum of $109.25 and admitted that only $709.35 was due. On January 9, 1941, the board of education made payment of the $709.35. On the same day the materialmen, as parties to the general assignee's action, recovered $699.50, thereby reducing their claim under the bond *pro tanto*.

As the present action was not begun until May 8, 1940, the question involved is whether it was begun within the limitation period of six months fixed by the bond.

Under the contract, which was made a part of the bond, the date of completion of the contract was expressly fixed to " be the date of the certificate of completion " to be issued by the board's architects. The contract also provided that upon completion of all work, the architects shall file a written certificate with the board as to the entire amount of work performed and compensation earned by the contractor, including extra work and compensation therefor. Final payment of the amount due the contractor was required to be made by the board within thirty days after the filing of the certificate of completion.

The requisite certificate of completion was issued on June 22, 1938, and the board of education, by its resolution of June 28, 1939, based upon such certificate, approved the contract as having been completed in full in accordance with all approved contract documents. That resolution has never been modified or abrogated. Under the contract and the bond, this formal acknowledgment by the primary obligee of the bond must be accepted as establishing the contractor's completion or performance of the contract.

This conclusion cannot be affected by the subsequent action of the board in determining that it was entitled to a credit for the rechromiuming work out of a breach in the performance of the contract proper or out of the collateral warranty therein against defects arising within a year after the completion of the work which survived completion and payment. The fact remains that the board of education did determine, on June 28, 1939, that the contract had been completed. It thereby established the existence of the first of the two factors that must precede defendant's invocation of the limitation in its bond.

Since the provision of the bond bars any action " later than six (6) months after the complete performance of said contract and final settlement thereof," it now becomes necessary to determine when there was a final settlement of the contract.

The board of education is a public corporation. The contract it made was a public contract. And, in connection with public building contracts and accounts, it is well settled that the words " final settlement " do not mean final payment, but the final determination by the authorized public authority of the amount due to or from the contractor. (*Illinois Surety Co.* v. *Peeler,* 240 U. S. 214, 219; *Consolidated Indemnity & Ins. Co.* v. *Smoot & Co., Inc.,* 57 F. [2d] 995, 996; *United States* v. *W. H. French Dredging & Wrecking Co.,* 52 id. 235, 238.)

While these cases deal with the words " final settlement " in fixing the time for the commencement of an action under the Hurd Act, as amended (U. S. Code, tit. 40, § 270 [since repealed]), by persons furnishing materials to government contractors, the same interpretation is applicable to the bond in controversy, for the several acts of determination and payment are common in the procedure of the Federal and State public authorities.

The contract therein requires final payment to be made within thirty days after the filing of the certificate of completion. The expression " final settlement " of the contract plainly refers not to the fact of final payment, but to the antecedent determination of the board of education as to the amount due the contractor after completion of the contract. These successive acts of determination and payment obviously are not identical.

Nor are they identical in law. After it received the architect's certificate of completion disclosing the amount earned by the contractor according to their calculation, there devolved upon the board of education the non-delegable duty of determining the amount justly due to the contractor. Determination of that amount was in essence an audit of the contractor's claim, which constituted the exercise of a quasi judicial function (*Matter of Associated Buffalo Architects, Inc.,* 221 App. Div. 778), whereas the subsequent act of payment was purely a ministerial part of the board's no quasi judicial functions.

Moreover, the " final settlement " of the contract does not mean, as claimed by respondents, the adjustment and payment of a claim in dispute under the contract. It is the unilateral act of the board of education in determining the amount owing whether there is a dispute or not. Assent to respondent's construction would necessitate the substitution in the bond of the words " final payment of disputed claims " for " final settlement of the contract."

When the board of education on October 9, 1939, drew its third check to the contractor's order after it had refused to pay the balance of the contract price in order to recoup the expense of rechromiuming, it then and there made a final settlement of the contract within the meaning of the bond. The board's delay in paying the contractor the amount it found due him until January 9, 1941, did not affect the final settlement of the contract made by it on October 9, 1939. Plaintiffs were, therefore, required to begin action on or before April 9, 1940.

The order should be reversed, with ten dollars costs, and defendant's motion for summary judgment dismissing the complaint should be granted, with costs.