## JOHNSON SERVICE COMPANY. Plaintiff, v. AMERICAN CASUALTY COMPANY, Defendant.

Common Pleas Court, Franklin County.

No. 190192. Decided January 3, 1957.

Benjamin F. Levinson, for plaintiff.
J. Paul McNamara, for defendant.

## OPINION

By LEACH, J.

This action was instituted by plaintiff against the defendant Bonding Company to recover the sum of $3050.00 on a performance bond in the form required by §153.57 R. C., and executed by J. Frank Bowen Co. Inc., contractor, as principal and the Bonding Company as Surety in connection with a contract with the Board of Education of the City School District of Columbus, Ohio, for the heating, ventilating and plumbing work on the addition and modernization of a school building. This case was submitted to the Court, the jury having been waived.

In carrying out that contract, Bowen entered into a contract with the plaintiff for the furnishing of certain labor and materials. The contract price agreed upon between Bowen and the plaintiff was $4,550.00, of which $1500.00 was paid, leaving a balance of $3050.00.

Sec. 153.56 R. C., reads as follows:

"Any person, firm or corporation to whom any money is due on account of having performed any labor or furnished any material in the construction, erection, alteration, or repair of any public building or other public work or improvement as provided in §153.54 R. C., at any time after performing such labor or furnishing such material, **but not later than ninety days after the acceptance of such building, work, or improvement by the duly authorized board or officer,** shall furnish the sureties on said bond, a statement of the amount due to any such person, firm, or corporation.

"No suit shall be brought against said sureties on said bond until after sixty days after the furnishing of said statement. If said indebtedness is not paid in full at the expiration of said sixty days, said person, firm, or corporation may bring an action in its own name upon such bond, as provided in §§2307.06 and 2307.07 R. C., **said action to be commenced not later than one year from the date of acceptance** of said building, work, or improvement." (Emphasis added.)

The sole issue presented in this case is whether plaintiff furnished the Bonding Company a statement of the amount due "not later than ninety days after the acceptance" and whether this action was commenced "not later than one year from the date of acceptance."

It is undisputed that plaintiff furnished the Bonding Company such a statement on January 21, 1954, and this suit was commenced on June 17, 1954.

Basically, it is the contention of the plaintiff that the work in question never has been accepted by the Board of Education within the purview of §153.56 R. C. On the contrary, it is the contention of the defendant that §153.56 R. C., authorizes acceptance by an officer as well as by a duly authorized Board and that the work in question was accepted by W. V. Drake, Clerk-Treasurer of the Board, on May 1, 1953.

On April 17, 1951, the Board adopted a resolution approving the recommendation of the Superintendent of Schools that Freshwater and Harrison, architects, be employed in connection with the remodeling of an addition to the Second Avenue School. On May 3, 1951, a written agreement was entered into between the Board of Education and Freshwater and Harrison, the agreement being signed on behalf of the Board by its Vice-president and Mr. Drake as Clerk-Treasurer. By resolution of January 7, 1952, the Board awarded a contract to J. Frank Bowen, Inc. in the amount of $44,350.00 for the addition and modernization of such school. On January 10, 1952, the Board, acting by its President and Clerk-Treasurer, entered into a contract with Bowen for such work and in connection with this contract, the Bonding Company executed its statutory bond. The contract between the Board and Bowen provided for certain monthly payments and further provided "on substantial completion of the entire work, a sum sufficient to increase the total payment of 90% of the Contract price, and thirty days thereafter, provided the work be **fully completed** and the **Contract fully performed,** the balance due under the Contract."

The agreement between the Board and the architects provided that the architects should furnish complete supervision throughout the period of construction. On April 29, 1953, the architects certified to the Board

that final payment was due to Bowen under the terms of the Contract between Bowen and the Board, dated January 10, 1952. On April 30, 1953, Edward Kromer, employed as a Structural Engineer for the Board of Education as a full-time employee supervising the construction and improvement of school buildings, and sometimes designated by the Board of Education as its architect, certified to the Board that such final payment was due to Bowen. On May 1, 1953, the Clerk-Treasurer, Mr. W. V. Drake, certified such payment as being correct, such was approved by the President of the Board, and payment made at that time.

Mr. H. C. Kuhnle, the present Clerk-Treasurer, testified that the procedure followed in handling this contract with Bowen, was the same as the procedure followed by the Board in all of the Board's contracts for improvements, additions or reconstructions. It appears that the Board did not at any time formally adopt a resolution stating specifically that they did hereby accept the improvement in question. It further appears that the Board has never followed this procedure of adopting such a formal resolution but instead, has always followed the procedure as in the instant case.

It appears from the work sheets of the plaintiff as to this particular job that the last work done by it at the Second Avenue School was on April 5, 1953. The contract between the Board and Bowen provided that the contract should be substantially completed on or before September 1, 1952, and the Second Avenue School was actually opened as a remodeled building on September 2, 1952. The work sheets of the employer indicate that most of the hours of work of their employees on the Second Avenue School took place prior to September 16, 1952, although, as heretofore indicated, we find isolated hours of work running until April 5, 1953.

As heretofore stated, it is the contention of the plaintiff that the work in question never has been accepted by the Board of Education in view of the fact that it has never adopted a formal resolution, stating in effect: "We hereby accept the work on the Second Avenue School." In support of this contention plaintiff makes reference to certain language in the opinion of Vickery, J. of the 8th District Court of Appeals in the case of **Royal Indemnity Company v. Buckeye Brick Company, 7 Abs 501,** wherein he stated that "The statute of Ohio undoubtedly had in mind a resolution as to the improvement so that it would be definite and determined when those who claimed liens against it could determine the time when they must file their claims or be forever barred." This same judge, however, in **Royal Indemnity Company v. American Slide and Supply Company, 8 Abs 282,** held as to a school contract that the work had been accepted "by Director Hogan" and that the statute authorized acceptance either by the Board or by an officer. We are in agreement with the opinion expressed by Judge Vickery that the statute permits acceptance by an officer as well as by a Board and conclude that there was acceptance within the purview of §153.56 R. C., on May 1, 1953. We conclude that the actions of the President of the Board of Education and the Clerk-Treasurer on that date did constitute an acceptance.

Judge Vickery also stated in the first case that the allowing of a final estimate does not necessarily constitute acceptance. It will be noted, however, in the instant case that the final payment was not the payment of an estimate but was payment in accordance with the terms of the contract which provided for payment to an amount of 90% of the contract price upon substantial completion and only provided for final payment thirty days after substantial performance and only "provided the work be fully completed and the contract fully performed."

Here we have a situation where the architectural firm employed for the supervision of the particular work, certified to the Board that the contractor was entitled to final payment, where a permanent employee of the Board in charge of all construction, made the same certification, followed by a certification by the Clerk-Treasurer, and followed by approval for payment by the President of the Board of Education. We know of no provision of law which would prevent a Board of Education from operating in such a manner and our attention has been directed to none.

Reference should be made to the case of **Southern Surety Co. v. Schmidt, 117 Oh St 28**, wherein Marshall, C. J., concluded "that the 'acceptance' under the Ohio statute must be an administrative determination of the actual completion of the work in accordance with the terms of the contract and in compliance with the plans and specifications, and that this must be fixed by public record and readily ascertained." Here, we conclude that there was "an administrative determination of the actual completion of the work in accordance with the terms of the contract and in compliance with the plans and specifications." In view of the fact that the contract provided for final payment only when "the work be fully completed and the contract fully performed," it follows that the administrative determination that the contractor was entitled to final payment, was an administrative determination of the actual completion of the work in accordance with the terms of the contract. All of this was done by public record, the parties having stipulated that all of the various records heretofore referred to, were public records, open to the public, and from which such facts could be ascertained.

It will be noted that the opinion of Marshall, C. J., relied strongly by way of analogy on the decision of the United States Supreme Court in the case of Illinois Surety Company v. United States, 240 U. S. 214. The federal statute under consideration by the United States Supreme Court, used the word "settlement" instead of "acceptance." The Court therein stated:

"We think that the words 'final settlement' in the Act of 1905 had reference to the time of this determination when, so far as the government was concerned, the amount which it was finally bound to pay or entitled to receive was fixed administratively by the proper authority. It is manifestly of the utmost importance that there should be no uncertainty in the time from which the six months' period runs. The time of the final administrative determination of the amount due is a definite time fixed by a public record and readily ascertained. As

an administrative matter, it does not depend upon the consent or agreement of the other party to the contract or account."

Judge Marshall concluded that "This reasoning has application to the instant case."

It should be noted that in the Schmidt case, Judge Marshall at the top of page 39, directed attention to the fact that the contract there in question contained a provision "Acceptance and Final Payment," the provisions of which had not been complied with at the time "acceptance" was claimed to have taken place in that case.

Plaintiff also makes reference to the case of **Nesbitt v. Massachusetts Bonding and Insurance Company, 38 Abs 299.** In our opinion, that case on its facts is entirely distinguishable from the instant case. In that case it is clear that there had never been a final accounting or acceptance of the work done by the contractor in question. Instead of that, in an effort to help another contractor secure money from P. W. A., the Board, without meeting or adopting any resolution, individually signed a document purporting to accept the work of all contractors, including those who obviously were still on the job.

In summary, we conclude that there was an acceptance of the work in question within the scope and intendment of §153.56 R. C., on May 1, 1953. The statement having been furnished by the plaintiff to the bonding company on January 21, 1954, more than ninety days after the acceptance, and the suit having been commenced on June 17, 1954, more than one year from the date of acceptance, and plaintiff's right to any recovery being predicated on compliance with the requirements of §153.56 R. C., we find for the defendant.

Entry may be prepared accordingly, reserving exceptions.