ILLINOIS SURETY COMPANY *v.* UNITED STATES TO THE USE OF PEELER ET AL., TRADING AS FAITH GRANITE COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 176. Argued January 14, 1916.—Decided February 21, 1916.

Final settlement of a contractor's account within the meaning of the Act of August 13, 1894, c. 280, 28 Stat. 278, as amended February 24, 1905, c. 778, 33 Stat. 811, is not when the final payment is made, but is the final administrative determination by the proper authority of the amount due; in this case, *held* that a suit by a sub-contractor against the surety commenced six months after date of such determination, but less than six months after payment was not prematurely brought, no action having been brought meanwhile by the United States.

Where the action on the contractor's bond was brought within the proper time, an amendment made after the expiration of such time, which does not set up a new or different cause of action but merely corrects a defective statement, may be allowed. *Texas Cement Co.* v. *McCord,* 233 U. S. 157.

The contested liability of a surety on a contractor's bond is not to be determined in equity; the action under the act of 1894 as amended in 1905 is one at law.

If the surety does not contest, but pays into court the full amount of liability, discharging all liability as provided by the statute, the proceeding is simply one for distribution of a fund in court.

Where a sub-contractor was not one of the original plaintiffs and there was no intervention on its behalf, *held* that a judgment could not be rendered in its favor more than a year after final settlement of the contractor's claim; nor does the fact that one claiming, but not proving such claim, to be its assignee was mad party plaintiff, amount to a sufficient and timely filing of the c t of such a sub-contractor.

215 Fed. Rep. 334, modified and affirmed.

The facts, which involve the construction of the Materialmen's Acts, of 1894 and 1905, and the rights of sub-contractors thereunder, are stated in the opinion.

*Mr. Bynum E. Hinton* for plaintiff in error.

*Mr. Benjamin E. Pierce* and *Mr. D. W. Robinson,* with whom *Mr. John L. Rendleman* was on the brief, for defendants in error.

Mr. Justice Hughes delivered the opinion of the court.

This action was brought by sub-contractors under the Act of August 13, 1894 (c. 280, 28 Stat. 278), as amended by the Act of February 24, 1905 (c. 778, 33 Stat. 811), in the name of the United States to recover upon a contractor's bond. The contract was for the construction of a post-office building in Aiken, South Carolina (Act of March 30, 1908, c. 228, 35 Stat. 526, 528), and the Illinois Surety Company (plaintiff in error) was the surety. The summons and complaint were filed on March 4, 1913. Motion to dismiss was made on September 22, 1913, upon the ground that the complaint did not allege that there had been a completion and final settlement of the contract between the contractor and the United States; or that there had been such completion and settlement more than six months, and within one year, prior to the commencement of the action.

Another ground for the motion was that the remedy under the statute was in equity. The motion was denied, the court permitting the complaint to be amended so as to allege that the contract was completed in July, 1912; that final settlement was made by the Treasury Department on August 21, 1912; and that no suit had been brought by the United States against the contractor and his surety within the six months' period. The defendant, reserving its objection to the order denying the motion and allowing the amendment, answered. Jury trial was waived by written stipulation and the case was heard by the district judge who found, in substance, the facts to be as follows:

That the building was completed, and on August 21, 1912, the Treasury Department "stated and determined the final balance" to be paid the contractor under the contract at the sum of $3,999.01; that this "adjustment and determination" was communicated to the contractor; that on August 26, 1912, a voucher of that date was prepared by the Department showing the balance, as above stated, to which the contractor appended his signature certifying the amount to be correct, and that on that day there was a definite acceptance by the contractor of the adjustment; that on September 11, 1912, a check for the above-mentioned sum was made out by the disbursing clerk of the Department, payable to the order of the contractor, who thereafter collected it; that upon the request of the relator (the Faith Granite Company) the Secretary of the Treasury, on January 16, 1913, furnished to it a certified copy of the contract and bond and that on the sixth day of March, 1913, . . . the present action was instituted by the filing . . . and by service of summons and complaint on defendant Surety Company." It also appeared that no action had been instituted by the United States upon the bond within the six months allowed by the statute.

The district court gave judgment for amounts found to be due to those for whose benefit the action was brought, and to certain intervenors, and this judgment was affirmed by the Circuit Court of Appeals. 215 Fed. Rep. 334. The contentions presented are: (1) That the action was instituted prematurely; (2) that the amendment of the complaint was improperly allowed; (3) that there was no right of action at law; and (4) that the court erred in giving judgment for the Carolina Electrical Company, one of the sub-contractors.

1. The statute provides, p. 812: "If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit . . . be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are hereby, authorized to bring suit in the name of the United States . . . against said contractor and his sureties, and to prosecute the same to final judgment and execution; *Provided,* That . . . it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later." In *Texas Cement Co.* v. *McCord,*[1] 233 U. S. 157, we said that this act created a new right of action upon terms named; and hence that an action brought by creditors before six months had expired from the time of the 'completion and final settlement of the contract' could not be sustained. In the present case, the plaintiff in error insists that there was no final settlement within the meaning of the statute prior to the issue of the check

---

[1] The statute is set forth in full in the margin of the opinion in the case cited.

for payment to the contractor on September 11, 1912, and that in this view the action was brought too soon.

It was evidently the purpose of the Act of 1905 to remedy the defect in the Act of 1894 by assuring to the United States adequate opportunity to enforce its demand against the contractor's surety and priority with respect to such demand. *Mankin* v. *Ludowici-Celadon Co.*, 215 U. S. 533, 538; *United States* v. *Robinson*, 214 Fed. Rep. 38, 39, 40. Accordingly it was provided that if the United States sued upon the bond, the described creditors should be allowed to intervene, and be made parties to the action, but subject "to the priority of the claim and judgment of the United States." And it was only in case the United States did not sue within the specified period that the creditors could bring their action. With this object in view—to protect the priority of the United States, and at the same time to give a remedy to materialmen and laborers on the contractor's bond and a reasonable time to prosecute it (*Bryant* v. *N. Y. Steamfitting Co.*, 235 U. S. 327, 337)—it was natural that the time allowed exclusively for action by the Government should begin to run when the contract had been completed and the Government in its final adjustment and settlement according to established administrative methods had determined what amount, if any, was due. Then the Government would have ascertained the amount of its claim, if it had one, and could bring suit if it desired. As such determinations are regularly made in the course of administration, nothing would seem to be gained by postponing the date, from which to reckon the six months, to the time of payment. Indeed, if an amount were found to be due from the contractor, and he was insolvent, there might be no payment, and, if payment were essential, there would be no date from which the time for the bringing of the creditors' action could be computed.

The pivotal words are not 'final payment,' but 'final

settlement' and in view of the significance of the latter term in administrative practice, it is hardly likely that it would have been used had it been intended to denote payment. See *United States* v. *Illinois Surety Co.*, 195 Fed. Rep. 306, 309; *United States* v. *Bailey,* 207 Fed. Rep. 782, 784; *United States* v. *Robinson* (C. C. A., Second), *supra; United States* v. *Massachusetts Bonding Co.*, 215 Fed. Rep. 241, 244; *United States* v. *Illinois Surety Co.* (C. C. A., Seventh), 226 Fed. Rep. 653, 662. The word 'settlement' in connection with public transactions and accounts has been used from the beginning to describe administrative determination of the amount due. By the Act of September 2, 1789, c. 12 (1 Stat. 65), establishing the Treasury Department, the Comptroller was charged with the duty of examining 'all accounts *settled* by the auditor' (§ 3). And it was made the duty of the auditor to receive 'all public accounts and after examination to certify the balance,' subject to the provision that any person whose account should be so audited might appeal to the Comptroller 'against such *settlement.*' The Act of March 3, 1809, c. 28, § 2 (2 Stat. 536), gave authority to the Comptroller to direct the auditor forthwith "to *audit and settle* any particular account," which he was authorized to audit and settle and "to report such *settlement*" for his revision and final decision. (See Rev. Stat., § 271.) By the Act of March 3, 1817, c. 45, § 2 (3 Stat. 366) it was provided that "all claims and demands whatever, by the United States or against them, and all accounts whatever, in which the United States are concerned, either as debtors or as creditors, shall be *settled and adjusted* in the Treasury Department." This provision was carried into § 236 of the Revised Statutes. The words 'settled and adjusted' were taken to mean the determination in the Treasury Department for administrative purposes of the state of the account and the amount due. See 2 Op. Atty. Gen. 518; *Id.*, 625, 629, 630. Re-

ferring to this provision, it was said by Mr. Chief Justice Waite in delivering the opinion of the court in *Cooke* v. *United States*, 91 U. S. 389, 399: "Thus it is seen that all claims against the United States are to be settled and adjusted 'in the Treasury Department'; and that is located 'at the seat of government.' The assistant-treasurer in New York is a custodian of the public money, which he may pay out or transfer upon the order of the proper department or officer; but he has no authority *to settle and adjust; that is to say, to determine upon the validity of, any claim against the government.* He can pay only after the adjustment has been made 'in the Treasury Department' and then upon drafts drawn for that purpose by the treasurer." Again, the Act of July 31, 1894, c. 174 (28 Stat. 162, 206–208), relating to the examination of accounts by auditors, and revisions of accounts, etc., provides, in § 8, that "the balances which may from time to time be certified by the Auditors to the Division of Bookkeeping and Warrants or to the Postmaster-General upon the *settlements* of public accounts, shall be final and conclusive upon the Executive Branch of the Government," except that any person whose accounts may have been "*settled,*" the head of the Executive Department, etc., to which the account pertains, or the Comptroller of the Treasury, may, within a year obtain a revision in the manner stated; also that "any person accepting payment under a *settlement* by an Auditor shall be thereby precluded from obtaining a revision of such settlement as to any items from which payment is accepted," and, further, that "when suspended items are *finally settled* a revision may be had as in the case of the original settlement." By the Act of May 28, 1896, c. 252, § 4 (29 Stat. 140, 179), the Secretary of the Treasury was directed to make report annually to Congress of such officers as were found "upon *final settlement* of their accounts" to have been indebted to the Government

and to have failed to pay the amount of their indebtedness into the Treasury.

We should not say, of course, that instances may not be found in which the word 'settlement' has been used in acts of Congress in other senses, or in the sense of 'payment.' But it is apparent that the word 'settlement' in connection with public contracts and accounts, which are the subject of prescribed scrutiny for the purpose of ascertaining the rights and obligations of the United States, has a well defined meaning as denoting the appropriate administrative determination with respect to the amount due. We think that the words 'final settlement' in the Act of 1905 had reference to the time of this determination when, so far as the Government was concerned, the amount which it was finally bound to pay or entitled to receive was fixed administratively by the proper authority. It is manifestly of the utmost importance that there should be no uncertainty in the time from which the six months' period runs. The time of the final administrative determination of the amount due is a definite time fixed by public record and readily ascertained. As an administrative matter, it does not depend upon the consent or agreement of the other party to the contract or account. The authority to make it may not be suspended, or held in abeyance, by refusal to agree. Whether the amount so fixed is due, in law and fact, undoubtedly remains a question to be adjudicated, if properly raised in judicial proceedings, but this does not affect the running of the time for bringing action under the statutory provision.

In the present case, the construction of the building was in charge of the Secretary of the Treasury and under the general supervision of the Supervising Architect. The Secretary of the Treasury was authorized to remit the whole or any part of the stipulated liquidated damages as in his discretion might be just and equitable. Act of

June 6, 1902, c. 1036, 32 Stat. 310, 326. On August 21, 1912, the Supervising Architect having received the certificate of the chief of the technical division of the office that all work embraced in the contract had been satisfactorily completed made his statement of the amount finally due, recommending that only the actual damage (as stated) be charged against the contractor and that the proper voucher should be issued in favor of the contractor for the balance, to wit, $3,999.01. And, on the same date, this recommendation was approved and actual damages charged accordingly by direction of the Secretary of the Treasury. This, in our judgment, was the 'final settlement' of the contract within the meaning of the act. We understand that the administrative construction of the act has been to the same effect. The regulation of the Treasury Department, as it appears from its circular issued for the information of persons interested in claims for material and labor supplied in the prosecution of work on buildings under the control of that Department (Dept. Circ., No. 45, Sept. 12, 1912), is as follows: "The department treats as the date of final settlement mentioned in said acts" (referring to the Acts of 1894 and 1905, *supra*), "the date on which the department approves the basis of settlement under such contract recommended by the Supervising Architect, and orders payment accordingly."

We conclude that the action was not brought prematurely.

2. With respect to the amendment of the complaint, it is apparent that as there was an existing right of action under the statute at the time the suit was brought, the case was not within the decision in *Texas Cement Co.* v. *McCord, supra*. No new or different cause of action was alleged in the amended complaint. The court merely permitted the defective statement of the existing right to be corrected by the addition of appropriate allegations,

and in this there was no error. Rev. Stat., § 954; *Missouri, Kans. & Tex. Ry.* v. *Wulf,* 226 U. S. 570, 576.

3. It is contended that the right given by the statute to the described creditors is of an equitable nature, and that the court erred in permitting recovery at law. The objection in the present case is merely technical, as the parties stipulated to waive trial by jury and the case was heard and decided by the district judge upon facts about which there is no dispute. The question has not been raised heretofore in this court, but it has been assumed in many cases that the action to be brought under the statute upon the contractor's bond, whether the action were instituted by the United States (*United States* v. *Congress Construction Co.,* 222 U. S. 199) or by creditors in the name of the United States, was an action at law. *United States Fidelity Co.* v. *Struthers Wells Co.,* 209 U. S. 306; *Mankin* v. *Ludowici-Celadon Co.,* 215 U. S. 533; *Title Guaranty Co.* v. *Crane Co.,* 219 U. S. 24, 35; *Bryant* v. *N. Y. Steamfitting Co.,* 235 U. S. 327. In *Title Guaranty Co.* v. *Crane Co., supra,* a question arose as to the propriety of allowing a docket fee to each claimant. Section 824 of the Revised Statutes provides for a docket fee of $10 "in cases at law, when judgment is rendered without a jury." The court said: "The allowance of a docket fee of $10 to each claimant appears to us to be correct. Rev. Stat., § 824. The claims are several and represent distinct causes of action in different parties, although consolidated in a single suit." In the circuit and district courts and in the circuit courts of appeals, while it seems that objection has rarely been made, there has been almost complete uniformity in treating the creditors' action under the Act of 1905 as one at law. See *United States* v. *Winkler,* 162 Fed. Rep. 397; *Stitzer* v. *United States* (C. C. A., Third), 182 Fed. Rep. 513; *United States* v. *Boomer* (C. C. A., Eighth), 183 Fed. Rep. 726; *United States* v. *Illinois Surety Co.,* 195 Fed. Rep. 306; *Baker Contract Co.* v.

*United States* (C. C. A., Fourth), 204 Fed. Rep. 390; *Eberhart* v. *United States* (C. C. A., Eighth), 204 Fed. Rep. 884; *United States* v. *Bailey*, 207 Fed. Rep. 783; *Vermont Marble Co.* v. *National Surety Co.* (C. C. A., Third), 213 Fed. Rep. 429; *United States* v. *Robinson* (C. C. A., Second), 214 Fed. Rep. 38; *United States* v. *Massachusetts Bonding Co.*, 215 U. S. 241; *United States* v. *Emery*, 225 Fed. Rep. 287; *United States* v. *Illinois Surety Co.* (C. C. A., Seventh), 226 Fed. Rep. 653. It was expressly held to be an action at law in *United States* v. *Stannard* (D. C., N. D., N. Y.), 207 Fed. Rep. 198, 202. The contrary conclusion was reached in *United States* v. *Wells* (D. C., E. D., Tenn.), 203 Fed. Rep. 146, 147; *Illinois Surety Co.* v. *United States* (C. C. A., Second), 212 Fed. Rep. 136, 139, and *United States* v. *Scheurman* (D. C., Idaho), 218 Fed. Rep. 915, 919. The point was raised on rehearing in *United States* v. *Illinois Surety Co.* (C. C. A., Seventh), 226 Fed. Rep., pp. 653, 663, 664, but, as it came too late, it was not decided.

The statute provides that the bond shall have "the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract." In this respect, the provision is substantially the same as that contained in the Act of 1894, and the obligation in favor of the materialmen and laborers has been held to be a distinct obligation. *Guaranty Co.* v. *Pressed Brick Co.*, 191 U. S. 416, 423, 425; *Hill* v. *Am. Surety Co.*, 200 U. S. 197, 201, 202. It is an obligation for the payment of money to the persons described, which they are entitled to enforce. The nature of the obligation is not changed by the fact that there is to be but one action. If the United States brings the action the persons described are entitled to be made parties and "to have their rights and claims adjudicated in such action and judgment rendered

thereon."· If the United States does not sue within the time specified, they may· bring action on the· bond .in the name of the United States and "prosecute the same to final judgment and execution." Any creditor. who duly presents his claim in such an action becomes a· party thereto with a distinct cause of action. *Title Guaranty Co.* v., *Crane Co., supra.*. The obligation of the surety thus enforced in a single action is a legal obligation to the United States for the use and benefit of the several claimants.· We do not regard the requirements that "the claim and judgment of- the United States" shall have priority, and that the aggregate recovery shall not exceed the penalty of the bond, as insuperable obstacles to proceeding at law. It is the case of an undertaking for the payment of many claims, not to exceed the specified penalty. If the total amount due exceeds the penalty of the bond, · it is provided that "judgment shall be given to each creditor *pro rata* of the amount of the recovery." This, however, merely requires an arithmetical calculation after the different causes of action have been passed upon and the amount due upon each determined. We see no ground upon which the conclusion can be justified that the liability of the surety on its bond is to be determined in equity. The contrary has been the generally accepted and, we think, the correct practice.

It should be added that a different situation would arise if the surety, availing itself of the statutory privilege, should pay into court the full amount of its liability, to wit, the penalty on the bond, for distribution. In that case the legal obligation of the surety would be discharged by the express terms of the statute and the proceeding would be simply for the distribution of a fund in court.

4. The plaintiff in error contends that the court erred in giving judgment in favor of the Carolina Electrical Company. The record shows that among those· named as the persons instituting the action was the "Electrical

Engineering and Contracting Company, assignee of Joseph B. Cheshire, Jr., receiver of the Carolina Electrical Company." The complaint set forth that the Carolina Electrical Company (a North Carolina corporation) had furnished to the contractor certain material and labor for which there remained unpaid the sum of $498.69; that on October 4, 1912, Joseph B. Cheshire, Jr., was appointed receiver of that company; and that on March 1, 1913, its claim had been "assigned and transferred for value" to the above-named plaintiff by the receiver, and that the plaintiff was the sole owner of the account and had succeeded to all the rights incident thereto which had belonged to the Carolina Electrical Company. The alleged transfer was denied. Evidence was introduced to show the incorporation, and the appointment of the receiver. The district judge found that the order proved was insufficient to establish the authority of the receiver to assign the claim, but held that the proceeding in the case was a sufficient filing of the claim on behalf of the Carolina Electrical Company. Judgment was awarded in favor of that company with direction that it should be paid "only to such person as may be authorized by law to receive it for said Carolina Electrical Company," and the judgment to this effect was affirmed.

In this, we think the court erred. The Carolina Electrical Company was not one of the plaintiffs and there was no intervention on its behalf. The trial court in its findings sets forth the interventions of certain other parties and states that no more interventions appear to have been filed in the cause. It is true, of course, that the real party in interest who is entitled to enforce the cause of action may be substituted as plaintiff. See *McDonald* v. *Nebraska*, 101 Fed. Rep. 171, 178. But the present case is not one of misnomer, or of a nominal plaintiff for whom the real party in interest is substituted, or indeed of any proper substitution. The plaintiff, the Electrical En-

gineering & Contracting Company was not a nominal party, nor was the action in any sense brought for the benefit of the Carolina Electrical Company. The record shows that it was brought, so far as this claim is concerned, solely for the benefit of the Electrical Engineering & Contracting Company upon the allegation that the claim had been assigned to it for value and that it was the exclusive and beneficial owner. According to the record, the Carolina Electrical Company was not made a party at any stage of the action unless this was accomplished by the decision and the judgment. But at the time of the decision, November 10, 1913, by reason of the express limitation of the statute, it was too late for that company to intervene.

The judgment is modified by striking out the provision in favor of the Carolina Electrical Company, and as thus modified is affirmed.

*Judgment affirmed.*