CONSOLIDATED INDEMNITY & INS. CO. v.
W. A. SMOOT & CO., Inc., et al.
No. 3259.

Circuit Court of Appeals, Fourth Circuit.
April 12, 1932.

P. J. J. Nicolaides, of Washington, D. C. (William F. Kelly, of Washington, D. C., on the brief), for appellant.

Gardner L. Boothe, of Alexandria, Va., Alexander M. Heron, of Washington, D. C., and G. C. Hampton, Jr., of Greensboro, N.

C. (Bynum E. Hinton, of Washington, D. C., and C. L. Shuping, Shuping & Hampton, and Wm. E. Comer, all of Greensboro, N. C., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and HAYES, District Judge.

PARKER, Circuit Judge.

This is an appeal by a surety company from a judgment in an action brought under the Hurd Act (28 Stat. 278, as amended [40 USCA § 270]) by persons who had furnished materials to a government contractor, whose bond had been signed by the surety company. The action was instituted January 27, 1931, and thereafter a number of claimants intervened. A jury trial was waived and the case was heard by the District Judge, who found as a fact that the date of final settlement between the government and the contractor was July 9, 1930. Judgment was rendered in favor of a number of the claimants, and from this judgment the surety company appealed. The questions raised by the assignments of error relate to the date of final settlement, the contention of the company being that the finding of the trial judge with regard thereto is not sustained by the evidence.

The facts with regard to the final settlement are undisputed. Work under the contract, which was the construction of barracks at Ft. Humphreys, Va., was completed June 24, 1930. On June 28, 1930, the constructing quartermaster at Ft. Humphreys agreed with the contractor upon the balance remaining due under the contract and prepared a voucher for that amount which was signed by himself and the contractor. This voucher showed the amount due under the original contract, the increases made in the contract price by change orders A, B, C, and D, the total of these amounts, the amount of previous payments and the balance remaining due and payable, which was shown as $18,038.56. As prepared it was marked final payment on the contract. The contractor on the same day presented it for payment to the disbursing officer of the War Department in Washington, but the latter refused to pay it because not accompanied by change order D, which added $39.68 to the contract price. The constructing quartermaster thereupon directed the disbursing officer to change the voucher so as to eliminate therefrom the amount of change order D and to designate it as being the tenth partial payment instead of final payment. This was done by striking out the word "final" on the face of the voucher and writing "10th partial payment" above it, and by subtracting $39.68 from the total shown to be due under the voucher. The $39.68 was designated as "awaiting adjustment." The voucher then showed:

| | | | | |
|---|---|---|---|---:|
| Original Contract | | | | $160,394.09 |
| Change Order A, increase dated 3/26/30.... | | | | 4,527.05 |
| " | " | B, | " dated 4/10/30.... | 454.00 |
| " | " | C, | " dated 4/28/30.... | 288.57 |
| " | " | D, | " | 39.68 |

| | |
|---|---:|
| Voucher Nos. on attached sheet....... | $165,703.39 |
| Previous payments ..................... | 147,664.83 |

| | |
|---|---:|
| Amount due and payable............... | $ 18,038.56 |
| Less amount of Change Order "D" awaiting adjustment .................. | 39.68 |
| Total ................................. | $ 17,998.88 |

Check in the sum of $17,998.88 was then issued to the contractor.

On July 9, 1930, the constructing quartermaster executed and delivered to the contractor a voucher for final payment in the sum of $39.68, the amount of change order D. This voucher was approved for payment on July 23d and check in payment of same was issued on July 26th, being delayed because change order D had still not been received by the disbursing officer. It appears, however, that this change order had been duly signed by the constructing quartermaster on June 25th.

[1] On these facts we agree with appellant that the finding that the final settlement occurred on July 9th is not supported by the evidence; but we think that the evidence shows conclusively that it did occur on June 28th. Final settlement as used in the Hurd Act does not mean final payment. "It means the final determination by the proper governmental authority of the amount which the government is finally bound to pay or entitled to receive under the contract." U. S., to Use of Stallings, v. Starr (C. C. A. 4th) 20 F.(2d) 803, 806; Illinois Surety Co. v. United States, ██ U. S. 214, 36 S. Ct. 321, 60 L. Ed. 609; Arnold v. U. S. (C. C. A. 4th) 280 F. 338; U. S. to Use of Union Gas Engine Co. v. Newport Shipbuilding Corporation (C. C. A. 4th) 18 F.(2d) 556. As said by the Circuit Court of Appeals for the Second Circuit in U. S. ex rel. Brown-Ketcham Iron Works v. Robinson, 214 F. 38, 40: "In determining the time when materialmen may begin suit, it would not do to fix it at some day 'after complete performance' merely. Defective work, damages for delay, and other matters might give the United States some claim which it might not decide to prosecute until some time after the work was turned over, apparently complete. The date was,

therefore, fixed relatively to 'complete performance of the contract and *final settlement thereof.*' We take it that these italicized words refer to the time when the proper government officer, who has the final discretion in such matters, after examination of the facts, satisfies himself that the government will accept the work, as it is, without making any claim against the contractor for unfinished or imperfect work, damages for delay or what not, and records that decision in some orderly way."

■■ The final settlement within the rule as thus stated occurred when the constructing quartermaster at Ft. Humphreys officially determined the balance due under the contract and recorded that determination by signing a voucher setting forth the balance. The fact that the voucher was changed before payment did not affect the matter. It still showed the balance due, and that only an insignificant portion of that balance was withheld awaiting adjustment. As a matter of fact, this portion of the balance had already been approved and payment was not made because the voucher was not accompanied by change order D; but, even if it had been subject to adjustment or change, this would have made no difference. As we said in the Starr Case, supra: "There may be a final settlement between the government and the contractor, so as to fix the rights of the creditor under the statute, notwithstanding the balance may be subject to change; for when the government has clearly indicated that it has no further claim against the surety, a final settlement within the purview of the act has taken place. U. S. v. Title Guaranty & Surety Co. (C. C. A. 7th) 254 F. 958; Robinson v. U. S. (C. C. A. 2d) 251 F. 461."

■ It is argued that there was no showing that there had ever been a final settlement within the meaning of the Hurd Act because there was no evidence of a settlement in the general accounting office, as required by the Budget and Accounting Act of 1921. Act June 10, 1921, § 305 (31 USCA § 71). We are not impressed by this argument. Undoubtedly, where the Comptroller General actually makes the administrative determination of the amount due, as in Lambert Lumber Co. v. Jones Engineering & Construction Co. (C. C. A. 8th) 47 F.(2d) 74, his determination is the settlement within the meaning of the act. But in other cases laborers and materialmen are not to be delayed in the assertion of their claims against bonds of public contractors until the Comptroller General's office shall have completed the auditing of the accounts of the disbursing officers. We think that, when the government official charged with responsibility in the premises officially determines the balance due to or from the contractor and makes a record of such determination, this is a final settlement within the meaning of the Hurd Act, notwithstanding that the accounts of disbursing officers are subject to audit in the Comptroller General's office. Just as the fact that the right to sue on the bond is not delayed by the contingency that the determination of the officer may not be approved by the courts (Ill. Surety Co. v. United States, 240 U. S. 214, 221, 36 S. Ct. 321, 60 L. Ed. 609), so it is not to be delayed by the contingency that such determination may not be approved by the Comptroller General's office in its auditing of the accounts. We regard the decision in Illinois Surety Co. v. United States, supra, as determinative of the matter. While it is true that that case was decided before the passage of the Budget Act of 1921, accounts at that time were subject to revision in the Treasury Department under a statute of a wording very similar to that upon which the surety company relies. Rev. St. § 236.

■ Since, therefore, there was a settlement within the meaning of the Hurd Act on June 28, 1930, this action, which was instituted on January 27, 1931, was not prematurely brought, and the error of the judge in finding that the settlement occurred on July 9th, as to that question, was harmless. It was likewise harmless so far as the judgment affected claims of parties who intervened in the action prior to June 28, 1931. An examination of the record discloses that all interveners in whose favor judgment was entered intervened prior to that date except Fries, Beall & Sharp, Inc., and R. E. Piper Co., Inc. These intervened more than twelve months after the settlement and are barred by the statute. We shall, therefore, follow the course pursued by the Supreme Court in a like situation in Illinois Surety Company v. United States, supra, by reversing the judgment below in so far as it allowed a recovery by them and affirming it in so far as it allowed a recovery by other claimants.

The judgment below will be modified by striking out the provision in favor of Fries, Beall & Sharp, Inc., and R. E. Piper Co., Inc.; and, as so modified, it will be affirmed.

Modified and affirmed.