### UNITED STATES FIDELITY & GUARANTY CO. v. UNITED STATES, for Use and Benefit of PRICE et al.

No. 6973.

Circuit Court of Appeals, Ninth Circuit.
June 5, 1933.

J. T. Pence and Harley W. Gustin, both of Salt Lake City, Utah, for appellant.

Richards & Haga, McKeen F. Morrow, and J. L. Eberle, all of Boise, Idaho, for appellees.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

SAWTELLE, Circuit Judge.

This is an appeal from a judgment against the appellant surety company in an action brought against it by certain materialmen and labor claimants, in the name of the United States, on a contractor's bond. The action was brought under the Materialmen's Act, also known as the Hurd Act (40 USCA § 270). The case was tried before the court without a jury.

Appellant was the surety on a bond of one Rhivers, who had contracted, under date of June 16, 1926, with the United States Department of Agriculture for the improvement of a road in the Sawtooth National Forest, State of Idaho. The bond was in the amount of $11,438, in favor of the United States and all persons furnishing labor or materials to the contractor, and was conditioned on the faithful performance of the contract by Rhivers.

Rhivers began work under the contract on July 1, 1926, but within two months abandoned the job. Thereupon appellant employed the Elliott Trucking Company to proceed with the work required under the Rhivers contract. The Elliott Trucking Company commenced work about October 1, 1926, and proceeded for about one month, when it also ceased and did not thereafter resume the work.

In June, 1927, the United States annulled the Rhivers contract for failure to complete the work or proceed therewith as required by the contract.

In August, 1927, the United States contracted with one Cavanagh to finish the work, and he completed it in July, 1928.

August 24, 1928, the Acting Chief Engineer of the Bureau of Public Roads of the United States Department of Agriculture authorized the District Engineer at Ogden, Utah, to make payment of final voucher due under the contract to contractor Cavanagh.

November 6, 1928, the Chief of the Bureau of Public Roads of the United States Department of Agriculture, at Washington, D. C., made claim, by letter, against appellant for the difference ($9,361.95) between the actual cost of the work and what it would have cost at the bid prices under the Rhivers contract. In this letter it is said: "The Rhivers contract has now been completed and we are in receipt of a statement of the final cost which shows that the claim which the Government has against your company is $9,361.95." Hereinafter we will again refer to this letter in connection with a controversy over the date of "final settlement" of the contract in question. Conferences and negotiations concerning the claim were thereafter had between the Bureau of Public Roads and appellant, and correspondence relating thereto also passed between the Secretary of Agriculture and the Attorney General. In a letter dated January 20, 1930, the Acting Secretary of Agriculture requested the Attorney General to bring suit against appellant to recover the amount of the claim. Apparently the Attorney General referred the matter to the United States attorney for the state of Maryland, and finally, on June 10, 1930, appellant paid the claim.

This action was commenced on May 1, 1931, in the name of the United States, for the use and benefit of creditors of Rhivers and the Elliott Trucking Company, who had furnished labor and materials. Other creditors of these contractors intervened in the action.

Appellant alleged in its answer that "final settlement" of the contract, within the meaning of the law, occurred more than one year prior to the commencement of the action, and that the cause of action was therefore barred by the one-year period of limitations contained in the statute under which the action was brought. The court overruled appellant's motion for dismissal and judgment of nonsuit, based on the ground that the evidence failed to show that the suit was commenced within one year after the complete performance of the contract and final settlement thereof. The court found and concluded that final settlement of the contract occurred on June 10, 1930, the date of payment by appellant of the claim of the government under the defaulted Rhivers contract, and accordingly that the action commenced on May 1, 1931, was not barred.

The question thus presented for our consideration is whether or not "final settlement" of the contract occurred within one year of the date of the commencement of the action.

As stated by appellant, "The controversy here revolves around the question of 'final settlement,' and what it means within the purview of the statute; appellees seem to

contend that it means the date when 'final payment' is made to the government, or by the government, of the balance due to either party, arising out of the construction contract; appellant contends that it is the date when the proper departmental officers, in the course of their regular departmental duties, determine the status between the government and the contractor, without any reference to actual agreements or understandings between the parties to the contract; in this instance, a determination by the acting chief engineer of the Bureau of Public Roads, as well as by the Chief of the Bureau of Public Roads in the course of their duties, as well as a recognition and. acceptance of that determination by the acting Secretary of Agriculture."

The statute in question reads, in part, as follows: "If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the department under the direction of which said work has been prosecuted that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are hereby, authorized to bring suit in the name of the United States in the district court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution: Provided, That where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later."

The contention of appellant, that "final settlement" of the. contract relates to the time when the amount due thereunder is determined by the appropriate administrative authority, rather than the date of "final payment" of such amount, is supported by the case of Illinois Surety Co. v. United States, to Use of Peeler, 240 U. S. 214, 36 S. Ct. 321, 60 L. Ed. 609. In that case the statute we are considering, and in particular the words "final settlement" as used therein, were construed by the Supreme Court. That was an action on a contractor's bond given by the Illinois Surety Company to secure the faithful performance of a contract to erect.a post office building. The statute, it will be noted, provides not only that an action on the surety bond by creditors of the contractor must be commenced within one year from the date of completion and final settlement of the contract, but also that such an action may not be commenced unless within six months prior thereto the United States has failed to bring suit on the bond. See Texas Portland Cement Co. v. McCord, 233 U. S. 157, 34 S. Ct. 550, 58 L. Ed. 893. It appears that in the Peeler Case, on August 21, 1912, after the building had been completed, the Treasury Department determined the amount of the final balance due to the contractor, and on August 26, 1912, a voucher for that amount was prepared by the department, which the contractor, on the same date, certified to be correct. On September 11, 1912, a check for that amount was issued to the contractor. On March 6, 1913, the action against the surety company was commenced. The surety contended that the action was prematurely brought, because March 6, 1913, it will be observed, was less than six months from September 11, 1912, the date upon which final payment was made to the contractor. The Supreme Court held that the action was not prematurely commenced, because the date of "final settlement" was August 21, 1912, and not September 11, 1912. In so deciding, the court said (page 222 of 240 U. S., 36 S. Ct. 321, 324) :.

"On August 21, 1912, the supervising architect having received the certificate of the chief of the technical division of the office that all work embraced in the contract had been satisfactorily completed, made his statement of the amount finally due, recommending that only the actual damage (as stated) be charged against the contractor, and that the proper voucher should be issued in favor of the contractor for the balance, to wit, $3,999.01. And, on the same date, this recommendation was approved and actual damages charged accordingly by direction of the Secretary of the Treasury. This, in our judgment, was the 'final settlement' of the contract within the meaning of the act. We understand that the administrative construction of the act has been to the same effect. The regulation of the Treasury Department, as it appears from its circular issued for the information of persons interested in claims for material and labor supplied in the prosecu-

tion of work on buildings under the control of that Department (Dept. Circ. No. 45, Sept. 12, 1912), is as follows: 'The Department treats as the date of final settlement mentioned in said acts' (referring to the Acts of 1894 and 1905, supra), 'the date on which the Department approves the basis of settlement under such contract recommended by the supervising architect, and orders payment accordingly.' "

After stating the purpose of the act, the court proceeded as follows (pages 218–221 of 240 U. S., 36 S. Ct. 321, 322):

"With this object in view,—to protect the priority of the United States, and at the same time to give a remedy to materialmen and laborers on the contractor's bond and a reasonable time to prosecute it (United States for Use of Alexander Bryant v. N. Y. Steam Fitting Co., 235 U. S. 327, 337, 35 S. Ct. 108, 59 L. Ed. 253, 257),—it was natural that the time allowed exclusively for action by the government should begin to run when the contract had been completed, and the government, in its final adjustment and settlement according to established administrative methods, had determined what amount, if any, was due. Then the government would have ascertained the amount of its claim, if it had one, and could bring suit if it desired. As such determinations are regularly made in the course of administration, nothing would seem to be gained by postponing the date, from which to reckon the six months, to the time of payment. Indeed, if an amount were found to be due from the contractor, and he was insolvent, there might be no payment, and, if payment were essential, there would be no date from which the time for the bringing of the creditors' action could be computed.

"The pivotal words are not 'final payment,' but 'final settlement,' and in view of the significance of the latter term in administrative practice, it is hardly likely that it would have been used had it been intended to denote payment. [Citing cases.] The word 'settlement,' in connection with public transactions and accounts, has been used from the beginning to describe administrative determination of the amount due. * * *

"We should not say, of course, that instances may not be found in which the word 'settlement' has been used in acts of Congress in other senses, or in the sense of 'payment.' But it is apparent that the word 'settlement' in connection with public contracts and accounts, which are the subject of prescribed scrutiny for the purpose of ascertaining the rights and obligations of the United States, has a well-defined meaning as denoting the appropriate administrative determination with respect to the amount due. We think that the words 'final settlement' in the act of 1905 had reference to the time of this determination when, so far as the government was concerned, the amount which it was finally bound to pay or entitled to receive was fixed administratively by the proper authority. It is manifestly of the utmost importance that there should be no uncertainty in the time from which the six months' period runs. The time of the final administrative determination of the amount due is a definite time, fixed by public record and readily ascertained. As an administrative matter, it does not depend upon the consent or agreement of the other party to the contract or account. The authority to make it may not be suspended, or held in abeyance, by refusal to agree. Whether the amount so fixed is due, in law and fact, undoubtedly remains a question to be adjudicated, if properly raised in judicial proceedings, but this does not affect the running of the time for bringing action under the statutory provision."

In the Peeler Case, the money was owing by the government to the contractor, while in the case at bar the contractor is the debtor. However, it is apparent that the court, in the Peeler Case, considered a situation such as this when it said, as set forth above, "We think that the words 'final settlement' in the act of 1905 had reference to the time of this determination when, so far as the government was concerned, *the amount which it was finally bound to pay or entitled to receive* was fixed administratively by the proper authority." (Italics ours.)

In the following cases, and in the cases therein cited, the rule of the Peeler Case has been followed: Southern Surety Co. v. Western Pipe & Steel Co. (C. C. A. 9) 16 F.(2d) 456; Antrim Lumber Co. v. Hannan (C. C. A. 8) 18 F.(2d) 548; United States v. Starr (C. C. A. 4) 20 F.(2d) 803; Consolidated Indemnity & Ins. Co. v. W. A. Smoot & Co. (C. C. A. 4) 57 F.(2d) 995.

■ We conclude therefore that the date of "final settlement" of the contract in the case at bar occurred more than one year prior to the commencement of the action, namely, on or before, November 6, 1928, the date upon which the Bureau of Public Roads informed appellant that "The Rhivers contract has now been completed and we are in receipt of a statement of the final cost which shows

that the claim which the Government has against your company is $9,361.95."

It is argued that this letter should not be considered as determinative of the date of "final settlement", because of the statement therein that, "At.any time that is agreeable to you we shall be glad to have the deferred conference concerning this matter, and other conditions growing out of this contract." Assuming that there is merit in this argument, and that further negotiations were intended concerning the amount claimed, thus precluding the notion of a "final settlement" on November 6, 1928, it is of but little avail to appellees, because it is quite apparent from the record that "final settlement," in any event, did occur at a date more than one year prior to the commencement of the action, namely, January 20, 1930, the date upon which the Secretary of Agriculture wrote to the Attorney General requesting that suit be brought against appellant for the amount of the claim. That request clearly indicates that the amount of the claim had been finally and conclusively determined on or before that date. True, the Attorney General, instead of instituting a suit, as requested, referred the matter to the United States attorney for the state of Maryland, and the latter apparently held further negotiations with appellant concerning the claims; but the nature of these latter negotiations—whether concerning the amount claimed, the amount of interest thereon, if any, etc.,—is not disclosed by the record. The finding of the court in this connection is simply: "That the Attorney General referred the matter to the United States Attorney for Maryland, who negotiated further with defendant until June 10, 1930, when defendant delivered its check for $9,361.95 to Colonel Amos W. Woodcock, then United States Attorney for Maryland, in full settlement of the Government's claim against the surety under the Rhivers bond, and this settlement was approved by the Attorney General on or about June 17, 1930, and by the Department of Agriculture on or about June 24, 1930." The amount finally paid is the identical amount claimed from the beginning, indicating that the amount was definitely and conclusively determined prior to the commencement of these latter negotiations.

Accordingly, we hold that the court erred in not finding that the action was barred by the one-year period of limitations.

Appellees complain of the fact that "Appellant held numerous conferences and continued negotiations and investigations with the officials and engineers of the Bureau of Roads for nearly two years, on the theory that a basis for final settlement could thus be reached and that there had not been a final determination by the government of the amount actually due from appellant, and it should not now be permitted to reverse its position for the sole purpose of defeating the claims of appellees." But these negotiations did not and could not delay the date of "final settlement." As said by the court in Arnold v. United States (C. C. A. 4) 280 F. 338, 342: "Defendants seek to avoid the effect of the settlement on the date in question, claiming that, although the work had been completed, the defendants had not acquiesced in the settlement. This position cannot be maintained. It is the ascertainment and determination by the proper governmental authorities of the amount due under the contract, that enables the government on the one hand, and subcontractors on the other, to assert their rights under the bond of the general contractor, and these rights cannot be held in abeyance by the mere failure of the general contractor to approve of what the government has done, or concur in the result thereof. Authorities are quite conclusive on this subject. Illinois Surety Co. v. United States, 240 U. S. 214, 36 S. Ct. 321, 60 L. Ed. 609, supra; United States v. Winkler (C. C.) 162 F. 397, 401; United States v. Bailey (D. C.) 207 F. 782, 783; United State v. Robinson, 130 C. C. A. 434, 214 F. 38; Robinson v. United States, 163 C. C. A. 637, 251 F. 461; United States v. Title Guaranty Co., 166 C. C. A. 320, 254 F. 958."

And in the Peeler Case, the Supreme Court said: "The time of the final administrative determination of the amount due is a definite time, fixed by public record and readily ascertained. As an administrative matter, it does not depend upon the consent or agreement of the other party to the contract. * * * The authority to make it may not be suspended, or held in abeyance, by refusal to agree."

Reversed.