## FIDELITY & CASUALTY CO. OF NEW YORK v. UNITED STATES for Benefit of DAUGHERTY et al.
### No. 6413.

Circuit Court of Appeals, Sixth Circuit.
May 11, 1934.

L. A. Faurest, of Elizabethtown, Ky. (Faurest & Faurest, of Elizabethtown, Ky., on the brief), for appellant.

O. M. Mather, of Hodgenville, Ky. (L. B. Handley, of Hodgenville, Ky., on the brief), for appellees.

Before HICKS and SIMONS, Circuit Judges, and HAHN, District Judge.

HICKS, Circuit Judge.

The Daugherty Lumber Company, herein called Lumber Company, contracted in writing with the United States to erect a comfort station and lay a limestone walk at the Lincoln Birthplace Memorial in La Rue county, Ky. Appellant, the Fidelity & Casualty Company of New York, executed the surety bond required by title 40, § 270, U. S. C. (40 USCA § 270). Appellee O. T. Daugherty, subcontractor, furnished labor and material for the work, which was completed on January 3, 1931. On June 3, 1932, Daugherty brought this action upon the bond against J. R. Wilson, assignee of the Lumber Company, and appellant, to recover a balance claimed to be due him as subcontractor. Wilson made no defense. There was a verdict and judgment against appellant in the sum of $1,774.-39 with interest and costs.

By various assignments of error, challenging the denial of a directed verdict, the correctness of the charge, and the court's refusal to give certain requested instructions, appellant raised the point that appellees' suit was not commenced within one year after the performance and final settlement of the contract.

The contract was entered into on behalf of the United States by Francis I. Maslin, Capt. Q. M. Corps, Constructing Quartermaster, and was completed on January 3, 1931. Shortly thereafter the contracting officer in charge of the work sent to Capt. Chas. G. Dobbins, Finance Officer, Finance Department, U. S. A., a certificate showing that the work had been completed and on February 13, 1931, Capt. Dobbins prepared and delivered to the Lumber Company a voucher of the War Department showing that the United States was debtor to the Lumber Company upon the contract in the sum of $1,485.-26. This voucher was designated "FINAL PAYMENT." It was made up as follows:

| | Amount Dollars Cts. |
|---|---|
| For construction of Comfort Station at Lincoln Birth Memorial, Hodgenville, Ky. | |
| Amount of Contract.................... | 6027.10 |
| *Percentage of contract completed 100%* .............................. | 6027.10 (Italics ours) |

| | | |
|---|---|---|
| Less $1032.00 paid on Vou. No. 69, Sept.; $1547.99 on Vou. No. 109, Oct.; $1691.85 on Vou. No. 455, Oct., 1930, account of Chas. G. Dobbins, Capt., F. D...................... | 4271.84 | |
| | | 1755.26 |
| Liquidated damages of $10.00 per day for 27 days $270.00.................... | 270.00 | |
| Total .............................. | 1485.26 | |

On the same date Capt. Dobbins issued a check upon the Treasury of the United States in favor of the Lumber Company for the amount of the voucher. The Lumber Company accepted the check unconditionally but made the following notation upon the voucher: "Signed under protest. See letters dated Feb. 12 and 13, 1931, attached hereto. The Daugherty Lumber Company." The substance of the protest as indicated in the letter of February 12, 1931, addressed by the Lumber Company to the Comptroller General was that the disbursing officer had not allowed an additional amount for the construction of the walk. The Comptroller General took no action upon this protest until some time after June 4, 1931, when acting, we assume, through the General Accounting Office, he allowed the Lumber Company an additional $1,390 which was paid by check to Wilson, Assignee, in September, 1931.

The statute, commonly called the Hurd Act, giving appellee a right of action, provides that suit "shall be commenced within one year after the performance and final settlement of said contract, and not later." Title 40, § 270, U. S. C. (40 USCA § 270).

Appellees brought suit on June 3, 1932. This was, of course, more than one year after the completion of the work, and likewise, more than one year after the issuance of the voucher and check, but less than one year after the allowance by the General Accounting Office of the additional sum. Upon these facts the question presented by the motion for a directed verdict is whether "final settlement" within the meaning of the act was consummated on February 13, 1931. If it was, appellees' right of action was barred; otherwise not.

We think the question must be answered in the affirmative upon the authority of Globe Indemnity Co. v. United States to Use of Steacy-Schmidt Mfg. Co., Inc., 54 S. Ct. 499, 500, 78 L. Ed. ——, decided by the Supreme Court on March 5, 1934, and since this case was argued. In that case the court reviewed Illinois Surety Co. v. United States to Use of Peeler, 240 U. S. 214, 36 S. Ct. 321, 60

L. Ed. 609, wherein it was held that the term "final settlement" in the Hurd Act was used "to describe an administrative determination of the amount due upon completion of the contract." It also reviewed the history of the Budget and Accounting Act (U. S. C., tit. 31, § 41 et seq. [31 USCA § 41 et seq.]) which set up the General Accounting Office under the direction of the Comptroller General and held that it was not intended by this act "to make final administrative determinations in the executive departments any the less final settlements within the meaning of the Hurd Act than they had been before." The court also said:

"The statute provides that subcontractors may intervene in any suit brought on the bond of the government, but, if the government does not bring suit, it makes the time of completion and final settlement of the contract the crucial date for measuring the period within which subcontractors are permitted to bring suit on the bond.

"The policy of the statute to afford protection to the interests of laborers and materialmen would not be effected unless they were allowed to bring suit with reasonable promptness after the United States has determined that it will have no claim on the bond and unless the date of final settlement which fixes the time within which suit is permitted could be ascertained with reasonable certainty and finality. A determination, made and recorded in accordance with established administrative practice by the administrative officer or department having the contract in charge, that the contract has been completed and that the final payment is due, fulfills these requirements. See Illinois Surety Co. v. United States, to Use of Peeler, supra."

The issuance of the voucher on February 13, 1931, was a "final settlement" in the sense that it was a determination by the administrative officer having the matter in charge, that, so far as the United States was concerned, the contract had been performed, the work accepted; and that the government had no further claim upon the bond. See Consolidated Indemnity & Ins. Co. v. W. A. Smoot & Co., 57 F.(2d) 995, 997 (C. C. A. 4). So far as the rights of appellee as subcontractor were involved it was not necessary that "final settlement" should constitute an agreement between the contractor and the government upon the exact balance due. He was not required nor permitted to wait until the claim of the contractor for a greater allowance was finally determined. U. S. v. Robinson, 214 F. 38, 40 (C. C. A. 2); U. S. v. Title Guar. & Sur. Co., 254 F. 958, 961

(C. C. A. 7); U. S., to Use of Stallings, v. Starr, 20 F.(2d) 803, 806 (C. C. A. 4); U. S. Fid. & Guar. Co. v. U. S., 65 F.(2d) 639, 643 (C. C. A. 9).

For the reasons indicated appellant was entitled to a directed verdict, and the judgment is therefore reversed and the case remanded.

We see no necessity for reviewing any of the other assignments of error.