**UNITED STATES, for Use and Benefit of F. B. SPEAR & SONS, v. ARTHUR STORM CO. et al.**

No. 7688.

Circuit Court of Appeals, Sixth Circuit.

Feb. 10, 1939.

Geo. C. Quinnell, of Marquette, Mich., for appellant.

E. D. Alexander, of Detroit, Mich. (Alexander, McCaslin & Cholette, of Detroit, Mich., on the brief), for appellees.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

This appeal consolidated three suits upon contractors' bonds. The appellee surety company, in compliance with Section 270, Title 40 U.S.C., 40 U.S.C.A. § 270,[1] bonded the Storm Company, a Michigan corporation, as principal for the completion of

---

[1] Section 270, Title 40 U.S.C., 40 U.S.C.A. § 270, has now been repealed.

contracts for the construction of public buildings at certain conservation camps in Michigan and in Illinois. The three contracts involved relate to the Michigan camps. Jury trial was waived in writing. The District Court after full hearing, dismissed the suits upon the ground that action had not been started within one year after performance and final settlement of the contract as required by Section 270, Title 40 U.S.C., 40 U.S.C.A. § 270, 33 Stat. 811, which in its material portions reads as follows:

"If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall * * * have a right of action * * * against said contractor and his sureties. * * * Provided, That * * * it * * * shall be commenced within one year after the performance and final settlement of said contract, and not later * * *."

The court found that final settlement was made on October 15, 1934, when H. O. Godwin, Captain Q. M. C., approved certificates for payment of the contracts in the several amounts found to be due. Appellant contends that the date of final settlement was October 10, 1935, when the General Accounting Office issued a certificate of settlement for payment. If this contention is correct, the suits filed April 13, 1936, were timely brought.

The contracts were entered into by the United States of America "represented by the contracting officer executing this contract," namely, H. O. Godwin, Captain Q. M. C. In their material provisions the contracts were identical, and provided that the work should be completed on or before June 21, June 30, and July 6, 1934, respectively. Each contract required that in the event of delay the contractor should pay agreed liquidated damages for each calendar day of delay until the work was completed, and that "the contractor shall within 10 days from the beginning of any such delay notify the contracting officer in writing of the causes of delay, who shall ascertain the facts and the extent of the delay and extend the time for completing the work when in his judgment the findings of fact justify such an extension. * * *" The finding of the contracting officer was made final and conclusive subject to appeal within thirty days to the

head of the department. Delays occurred, but the contractor failed to avail himself of his privilege of notifying the contracting officer and no extension of time was made. No appeal was taken from Captain Godwin's findings as to delay, and therefore under the contract his findings became final. The Storm Company was notified that liquidated damages would be collected for delay. It claimed as to the Camp Kenton contract that the delay was caused by a trivial inadvertence which in no way prevented the use of the buildings and asked that the account be referred to the General Accounting Office. As to this and all the Michigan contracts it protested against the liquidated damages assessed. On October 15, 1934, Captain Godwin certified as to the Camp Kenton contract that the work had been completed and accepted, that it was in accordance with the terms of the specifications, and that the contractor was entitled to payment of $2,200. $20 per day ($580) deducted as liquidated damages for 29 days of delay, and payment was affirmed in the amount of $1620.00. On the same day Captain Godwin approved the finding of the construction officer as to Camp Newberry, deducted $400 damages for delay, and approved payment in the amount of $3,550. He did not accept the recommendation of the construction officer as to Camp James Lake, but charged 30 days delay ($600) and approved payment for $3,800. The certificates designated the appropriation from which payment was to be made. A voucher in the usual form for these three contracts was prepared in the routine way by the finance officer at Chicago, and was attached to the certificates. Captain Godwin offered the Storm Company to pay the amount certified as due on the Michigan camps. The Storm Company continued to protest the deductions for delay. Meanwhile Captain Godwin had received statements of indebtedness against the Storm Company for services and materials, of which fact he notified the finance office. In the course of the communications and negotiations the War Department on October 10, 1934, notified the finance officer to stop payment on these contracts. On November 5, 1934, the War Department instructed the finance officer to disregard this stop order. On the same day the files in connection with the Storm Company matter were forwarded to the chief of finance at Washington, who on November 8, 1934, sent them to the General Accounting Office for settlement.

On October 10, 1935, the General Accounting Office issued a certificate that the United States owed the Storm Company the amount of $15,021.53 as balance due for construction upon the four Michigan camps. As to the three camps in question here, the amounts included in this figure of $15,021.53 were identical with the amounts certified by Captain Godwin as due on October 10, 1934.

The District Court found that Captain Godwin was the administrative officer having the contracts in charge. Appellant contends that the finance office of the War Department was the department having the contract in charge, and that since it made no determination as to the payment due, final settlement was not made until action was taken by the General Accounting Office on October 10, 1935. In support of this contention it urges that final payment could not be made on October 15, 1934, as certain matters were pending which necessitated the accounts being withheld, such as that the contractor was unwilling to accept settlement on the basis of the deductions for liquidated damages, and that a claim for personal injury which occurred on August 25, 1934, in one of the Illinois camps, was pending.

■■■■ Appellant's reliance on the latter and similar circumstances proceeds from its misconception of the legal meaning of the term "final settlement." Final settlement is not synonymous with final payment. It precedes payment and denotes the proper administrative determination with respect to the amount due. Illinois Surety Co. v. United States, 240 U.S. 214, 218, 36 S.Ct. 321, 60 L.Ed. 609. In that case the Supreme Court declared [page 323]:

"The pivotal words are not 'final payment,' but 'final settlement,' and in view of the significance of the latter term in administrative practice, it is hardly likely that it would have been used had it been intended to denote payment. * * * We think that the words 'final settlement' in the act of 1905 had reference to the time of this determination when, so far as the government was concerned, the amount which it was finally bound to pay or entitled to receive was fixed administratively by the proper authority."

Cf. United States F. & G. Co. v. United States, 9 Cir., 65 F.2d 639, 641; Consolidated Indemnity & Ins. Co. v. W. A. Smoot & Co., Inc., 4 Cir., 57 F.2d 995, 996. In the case of Globe Indemnity Co. v. United States, 291 U.S. 476, 54 S.Ct. 499, 78 L.Ed. 924, the court decided that the words "final settlement" did not mean payment, and gave a definition of the term which is controlling here. It was pointed out that "The policy of the statute to afford protection to the interests of laborers and materialmen would not be effected unless they were allowed to bring suit with reasonable promptness after the United States has determined that it will have no claim on the bond and unless the date of final settlement which fixes the time within which suit is permitted could be ascertained with reasonable certainty and finality. A determination, made and recorded in accordance with established administrative practice by the administrative officer or department having the contract in charge, that the contract has been completed and that the final payment is due, fulfills these requirements." (page 483, 54 S.Ct. page 501.) The court adds:

"If, as respondent maintains, this determination may be supplanted by a subsequent settlement by the Comptroller General, the subcontractors could never be certain that the departmental determination would mark the period of limitation, and suits begun within the statutory period measured from this determination might have to be discontinued and begun anew if the departmental head or disbursing officer should later refer the claim to the Comptroller General." (page 484, 54 S.Ct. page 501.)

Cf. Fidelity & Casualty Co. of New York v. United States, 6 Cir., 70 F.2d 895.

The decisive date, therefore, is not the date of payment, but the time when the administrative officer having the contract in charge made and recorded the determination of the amount due. There is ample evidence to support the finding of the District Court that Captain Godwin was the administrative officer having the contract in charge. Under the contract, which gave the contracting officer wide powers of discretion, Captain Godwin was made the representative of the United States. Acting as the constructing officer of Camp Kenton, he certified that the work had been completed, and acting as officer having the contract in charge, he determined that the final payment was due, and certified this amount. As to the other two contracts where he was not the construction officer, he adopted or modified the findings of the construction officers, and

as officer in charge of the contracts he determined that these two final payments were due. The three certificates, together with a voucher issued thereon, were recorded in the finance office of the War Department in accordance with established administrative practice. Captain Godwin, who alone had the knowledge and data necessary to prompt decision, made every determination prerequisite to payment. Globe Indemnity Co. v. United States, supra, at page 483, 54 S.Ct. 499. The fact that the contractor did not accept the settlement did not affect the time of determination. United States F. & G. Co. v. United States, supra; Fidelity & Casualty Co. of New York v. United States, supra. The finance office did not modify the findings and certification and the General Accounting Office accepted them. Cf. United States to Use of J. E. Sadler & Co. v. W. H. French Dredging & Wrecking Co., D.C., 52 F.2d 235. Captain Godwin's determination would certainly have been "final settlement" for the purposes of the statute if payment had preceded the action of the General Accounting Office. Globe Indemnity Co. v. United States, supra, at page 484, 54 S.Ct. 499. Consolidated Indemnity & Ins. Co. v. W. A. Smoot & Co., Inc., supra. To hold that the determination was wiped out by a later reference to the General Accounting Office would be "inconsistent with the obvious purpose of the statute." Globe Indemnity Co. v. United States, supra.

The judgment is affirmed.