**SAFECO INSURANCE COMPANY OF AMERICA and Interstate Company, Inc., Appellants/Cross-Appellees,**

v.

**HONEYWELL, INC., Appellee/Cross-Appellant.**

**Nos. 5112, 5127.**

Supreme Court of Alaska.

Dec. 12, 1981.

Nissel A. Rose, Anchorage, for appellants/cross-appellees.

Robert J. Dickson, Atkinson, Conway, Bell & Gagnon, Inc., Anchorage, for appellee/cross-appellant.

Before RABINOWITZ, C. J., CONNOR, BURKE, and MATTHEWS, JJ., and THOMAS SCHULZ, Superior Court Judge.*

OPINION

CONNOR, Justice.

This is an action by a subcontractor against a surety's payment bond. Interstate Company, Inc. (Interstate) was the prime contractor for the construction of the Mulcahy Park Sports Arena under Contract No. C–7425, awarded by the predecessor of the Municipality of Anchorage on July 11, 1974. Safeco Insurance Company of America (Safeco) executed a payment bond under AS 36.25.010(a)(2) with Interstate as principal. Interstate awarded the mechanical subcontract to General Mechanical of Alaska (GMA). Interstate required GMA to post a performance and payment bond; GMA's bond was provided by Summit Insurance Company of New York. GMA awarded two subcontracts to Honeywell, Inc. Later, on December 12, 1975, Honeywell served notice of a claim on Interstate for $24,011 for services rendered. Honeywell served another claim for $5,569 on Interstate on February 4, 1976. Honeywell then sued Safeco, as the bonding company, and Interstate for $30,204 on March 18, 1977.

Honeywell moved for summary judgment on May 29, 1979. The superior court considered part of Honeywell's motion and granted it as to the timeliness of the suit. The issue of proper notice to Interstate on all claims was left for trial.

Before the trial, the parties, without their attorneys, agreed to settle the case on Au-

gust 31, 1979, as to the $5,569 claim. When Interstate presented the settlement check to Honeywell's attorney, the attorney denied that Honeywell's Anchorage representative had the authority to settle.

On September 12, 1979, there was a trial on the remaining issues. Judgment was entered on September 20th in favor of Honeywell. Following a hearing on November 1, the judgment was revised, in response to a motion under Alaska Rule of Civil Procedure 60(b), to reflect the parties' signed settlement of September 28th, which was negotiated on August 31st. The judgment was again revised on December 5, 1979, on the superior court's own motion, to modify the findings of fact and conclusions of law. Interstate and Safeco appeal from the judgment in favor of Honeywell; Honeywell cross-appeals from the same judgment.

I

Honeywell claims that the appeal should not be considered because it is untimely. Former Appellate Rule 7(a)(1)[1] required that the appellant file a notice of appeal within 30 days from the entry of judgment. In this case, there are three dates of entry on the judgment from which the appeal and cross-appeal are taken. The first judgment was entered on September 20, 1979. The second judgment, based on the November 1st hearing, was entered on November 16th and reduced Honeywell's recovery. The third judgment was entered on December 5th and reflected modified findings of fact and conclusions of law to establish consistency between the court's reasoning and the damage award.

If Interstate had appealed from the September 20th judgment, both the judgment amount and the findings of fact and conclusions of law would have been inaccurate. An appeal from the November 16th judg-

---

* Schulz, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. Since this case was filed before the effective date of the new Appellate Rules, it is governed by the Rules in effect before November 15, 1980. Alaska Supreme Court Order No. 439 (Oct. 21, 1980).

ment would have contained the proper award, but inconsistent reasoning. The superior court, aware of the confusion in the case, modified its reasoning and reaffirmed the award in the December 5th judgment.

█ Former Appellate Rule 46 provides that the requirements of the appellate rules may be relaxed where a strict adherence to them will work injustice. *See McCarrey v. Commissioner of Natural Resources*, 526 P.2d 1353, 1355 (Alaska 1974). This case is an appropriate one in which to relax the provisions of former Appellate Rule 7(a)(1). We note that had the parties appealed from either the September or November judgments, the resolution of the appeal would have been more difficult than necessary. Further, we do not wish to discourage trial courts from revising their judgments and clarifying the record. As a practical consideration, the judgment, on its face, has three dates of entry. That in itself is highly confusing and suggests that it is appropriate to relax the rules. Thus, we find that the appeal is timely.

## II

On December 19, 1979, the superior court ordered Interstate to post a $40,000 bond to stay judgment. Interstate filed a motion to invest the cash deposit in a money market fund with the income to be paid to Interstate. Honeywell agreed with the investment, provided that it would receive one-half of the income in addition to the judgment award if Honeywell prevailed in the appeal. The trial court permitted the investment and granted Honeywell's condition.

█ The decision of whether to impose the condition requested by Honeywell is within the trial court's discretion. We will interfere with a discretionary determination of the trial court only if it is arbitrary, capricious or manifestly unreasonable. *See Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979).

█ Interstate submitted the prospectus for the money market fund in which it planned to invest the $40,000. The prospectus reflects a net asset gain for the years ending August 31, 1978, and August 31, 1979. Honeywell argued that there was a risk of loss of the $40,000 if the amount were placed in the money market fund and thus Honeywell should receive one-half of the income as compensation for the risk. The risk alleged by Honeywell is not supported by the record. There are no accompanying documents with Honeywell's motion supporting its concern that the investment may decrease in value. It was arbitrary and capricious for the trial court to agree to Honeywell's condition, which in effect increased Honeywell's award, based on a claimed risk that has no support in the record. The order granting one-half of the income to Honeywell is reversed.

## III

On March 18, 1977, Honeywell sued Safeco and Interstate for breach of contract. Interstate moved for summary judgment on the ground that Honeywell's complaint was untimely. The superior court denied Interstate's motion, but granted Honeywell's concurrent motion, and held that the complaint was timely.[2]

2. A preliminary question before reaching the merits of final settlement is whether the Browning deposition of July 9, 1979, is properly before this court. Honeywell argues that since it was not signed, although review and signature were expressly requested by the deponent, it is not admissible under Civil Rule 30(e). The reason it was not signed was that Interstate filed the deposition in court and the clerk sealed it before the deponent had the chance to review it. Honeywell further argues that since the trial court did not consider the deposition, it is not properly before this court.

Civil Rule 32(d)(4) provides that irregularities in the manner in which the deposition is signed, sealed or filed are waived unless there is a motion to suppress. The deposition was sealed on July 11 and the hearing in which the deposition was to be used was August 15. Honeywell, although it had ample time to move to suppress, failed to do so. The trial court considered a memorandum drawing from the deposition. Thus it is mischaracterization to argue that the deposition was not before the court. Accordingly, the deposition is properly before us.

The applicable statute of limitations is AS 36.25.020(c): "No suit may be started after the expiration of one year after the date of final settlement of the contract." The contract between the Municipality and Interstate did not define final settlement. As the contract was completed and payments were made, agents of the Municipality made no specific determination of the date of final settlement. The issue is: Under the circumstances surrounding this contract, when did final settlement occur?

The term "final settlement," in referring to government contracts, appeared in 1905 in the Heard Act (Ch. 778, 33 Stat. 811):

"*Provided*, That where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract . . . . "

The Miller Act (Ch. 642, § 2, 49 Stat. 793) in 1935, amended the Heard Act but retained the provision requiring suits to be filed no more than "one year after the date of final settlement of such contract." The meaning of the term "final settlement" was litigated extensively and caused considerable uncertainty in the construction industry. In 1959, Congress abandoned the term in favor of "the day on which the last of the labor was performed or material supplied by him." Act of Aug. 4, 1959, Pub.L.No. 86–135, § 1, 73 Stat. 279 (codified at 40 U.S.C. § 270b). The legislature has not changed the Alaska statute; the term "final settlement" is still in use here.

█ When interpreting the Alaska statute, it is appropriate to look at federal case law interpreting the previously similar Miller Act. *State v. Walsh & Co.*, 575 P.2d 1213, 1218 (Alaska 1978). Final settlement under federal law was defined in *Illinois Surety Co. v. United States*, 240 U.S. 214, 221, 36 S.Ct. 321, 324, 60 L.Ed.2d 609, 614 (1916) as:

"the time . . '. when, so far as the government was concerned, the amount which it was finally bound to pay or entitled to receive was fixed administratively by the proper authority."

Later, in *Globe Indemnity Co. v. United States*, 291 U.S. 476, 483, 54 S.Ct. 499, 501, 78 L.Ed. 924, 928 (1934), final settlement was defined as:

"A determination, made and recorded in accordance with established administrative practice by the administrative officer or department having the contract in charge, that the contract has been completed and that the final payment is due . . . . "

Relying on *Illinois Surety*, Interstate argues that final settlement occurred on January 5, 1976, when the Director of Public Works approved for payment Pay Estimate No. 16. That estimate lists as 100 percent complete all of the construction requirements of the contract. After No. 16, the contract price could not change, and thus the amount by which the Municipality was finally bound was fixed administratively. Honeywell relies on *Globe Indemnity*, and contends that May 13, 1976, is the date of final settlement. On that day, the Director of Public Works approved Pay Estimate No. 17 which authorized the two percent retainage to be paid. Honeywell maintains that the contract was not completed until some time in March, 1976, because construction continued past January 5, 1976, as indicated by the on-site inspection report, and Interstate did not file the certificate of compliance, as required by section 10.08 of the contract, until May 12, 1976. Thus, it argues, the authorization to release the retainage, *i.e.*, Pay Estimate No. 17, was the *Globe Indemnity* determination that the contract was complete and final payment was due.

Section 10.01 of the contract defines final acceptance as the date when the project "has been constructed, cleaned up, and completed in accordance with the Plans and Specifications." Concurrent with or shortly after final acceptance, the final pay estimate is approved, allowing release of funds to the contractor. Thus final acceptance, as defined in Section 10.01, is equivalent to final settlement as used in AS 36.25.020(c). Although the current municipal construc-

tion contracts require an entry specifying final acceptance, the contract in the case at bar did not provide for that entry.

According to the contract, final acceptance should be at least 90 days before release of retainage. Release was around May 18, 1976. Thus, final acceptance should have occurred prior to February 18th. The Municipality acted consistently with the February 18th date by honoring a March 15, 1976, claim by another subcontractor and reserving the amount of the claim from the two percent retainage. According to the contract, section 10.07, the Municipality will not reserve money for the retainage until final acceptance, which begins the 90 day lien period. The approval by the Municipality on January 5th, of Pay Estimate No. 16, stating that there was 100 percent completion of all construction items is also consistent with a final acceptance date prior to February 18th. According to section 10.05, article 5.12 of the contract, final inspection occurs before final acceptance. The Municipality's architect submitted a "final inspection report" on October 20, 1975. In cases determining the date of "final settlement," courts generally place great weight on administrative actions consistent with an alleged date of final settlement. *See Arnold v. United States*, 280 F. 338, 341–42 (4th Cir. 1922); *United States v. Arnold*, 268 F. 130, 134–35 (D.Conn.1920).

However, the arguments setting May 13th as the date of final acceptance have equal weight. Final acceptance contemplates contract completion, but on March 8th the architects noted a number of deficiencies still not corrected. Interstate did not complete its certificate of compliance until March 24th, and did not submit it until May 12th. According to the contract, the certificate must be filed prior to acceptance (but the contract does not state "prior to final acceptance"). It was on the basis of the requirement of a certificate that the superior court decided that there was no final settlement until the certificate was filed. The Municipal Engineer, during the performance of the contract, testified that the date of final acceptance was unclear. Further, he said it could not be before

March 8th, the date of the last architect's letter setting out deficiencies. Any date between March 8th and May 13th could have been the final acceptance, according to the engineer. In answer to the arguments that set final acceptance before February 18th, Honeywell suggests that the Municipality simply did not wait 90 days after final acceptance to pay the retainage. The "final inspection report" of October 20, 1975, in substance was not the final inspection required by section 10.05, article 5.12 of the contract, but was the semi-final inspection specified in the same article. Honeywell does not explain why the Municipality honored the subcontractor's claim on March 15th.

■ Final settlement requires a specific administrative act. *Globe Indemnity*, 291 U.S. at 483, 54 S.Ct. at 501, 78 L.Ed. at 928; *Illinois Surety*, 240 U.S. at 221, 36 S.Ct. at 324, 60 L.Ed. at 614. Thus either January 5th or May 13th, the dates of approval for Pay Estimates Nos. 16 and 17, respectively, are the only two choices. No other administrative act bearing on the completeness of the contract and approving payment occurred between January 5th and May 13th, or after May 13th.

■ In discussing these two dates, we also note that while the defense of the statute of limitations is a legitimate one, it is not generally favored by the courts. As the Supreme Court of Washington has noted, "[T]he statute of limitations is not such a meritorious defense that either the law or the facts should be strained in aid of it." *Guy F. Atkinson Company v. State*, 66 Wash.2d 570, 403 P.2d 880 (1965). Statutes prescribing a relatively short period of time for allowing actions are usually construed narrowly to the extent necessary to give the holder of a cause of action a fair opportunity to present his claim. Where two constructions as to the limitations period are possible, the courts prefer the one which gives the longer period in which to prosecute the action. *O'Malley v. Sims*, 51 Ariz. 155, 75 P.2d 50, 54–55 (Ariz.1938); 3 C. Sands, Sutherland Statutory Construction

§ 70.03, at 301 (4th ed. 1973). We believe that the purpose of AS 36.25.020, to protect persons who furnish labor or material for state public works projects from the risks of nonpayment (*State v. Neal and Sons, Inc.,* 489 P.2d 1016 (Alaska 1971)), is best served by just such a construction in this case. Given the lack of a fixed point of final settlement in the contract, it would be unjust and an unnecessarily rigid application of the law to hold that January 5th is the date of final settlement and thereby to bar Honeywell's suit. Additionally, although the release of the retainage on May 18th suggests that final acceptance was prior to February 18th, such a finding is not permissible because final acceptance requires a completed contract, and the construction was not complete until after March 8th. Under the administrative timing in this contract, final settlement was on May 13th. That date satisfies the *Globe Indemnity* requirements that the contract be completed and that there be a specific administrative act authorizing payment. Thus, Honeywell's complaint, filed on March 18, 1977, was timely.

### IV

█ On September 20, 1979, Honeywell submitted a memorandum of costs pursuant to Alaska Rule of Civil Procedure 79. On October 5th, costs in the amount of $2,113.81 were assessed against Interstate. In November, the superior court recognized the September 28th settlement agreement and made it retroactive to August 31st. In so doing the court modified the judgment, but not the cost assessment. In December, the court specifically changed the findings of fact to acknowledge the settlement agreement but declined to modify the award of costs. Since it appears that Honeywell's memorandum of costs was drawn up and costs were assessed before the terms of the settlement agreement were judicially recognized, we vacate the award of costs and remand to the superior court for a reassessment consistent with the September 28th agreement.

During the November 1st hearing, which resulted in the November 16th judgment, the superior court assessed attorney's fees of $4,000 against Interstate. Interstate appeals from this award on the ground that it is excessive. Honeywel' appeals on the ground that the award is insufficient.

█ Because the award of $4,000 in attorney's fees is more than the amount established by Alaska Rule of Civil Procedure 82 for a $24,011 judgment, the superior court set out reasons for the higher award. *See Patrick v. Sedwick,* 413 P.2d 169, 179 (Alaska 1966). The superior court stated that the amount of time spent in the courtroom for the numerous motions and the accumulation of documentation justified the higher award. These are permissible reasons for an increase from the standard Civil Rule 82 award. *See American Service, Inc. v. Tundra Investment Co.,* 473 P.2d 614, 614 n.1 (Alaska 1970). The award of attorney's fees is within the court's discretion, and we will not disturb the award unless it is manifestly unreasonable. *Palfy v. Rice,* 473 P.2d 606, 613 (Alaska 1970). We do not find that the award is manifestly unreasonable.

█ Honeywell contends that the superior court should have awarded full attorney's fees in the amount of $16,126 because Interstate acted in bad faith. After considering each of Honeywell's allegations of bad faith, we still do not find that the superior court's failure to award full attorney's fees was manifestly unreasonable.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

COMPTON, J., not participating.