Gerald G. GOODMAN, Appellant,

v.

**FAIRBANKS NORTH STAR BOROUGH SCHOOL DISTRICT, and Fairbanks North Star Borough, Appellees.**

No. S–9521.

Supreme Court of Alaska.

Dec. 7, 2001.

James M. Hackett, Law Offices of James M. Hackett, Inc., Fairbanks, for Appellant.

John A. Treptow and Jahna M. Lindemuth, Dorsey & Whitney, LLP, Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

Gerald Goodman sued his former employer in mid-February, 1998 for allegedly discriminating against him by failing to accommodate his physical disability. Was his complaint timely? Because we hold that there are genuine fact disputes about whether Goodman knew or should have known before late in February 1996, when his application for disability retirement was accepted, that his employer was refusing to accommodate his disability, we reverse the employer's summary judgment and remand for further proceedings.

### II. FACTS AND PROCEEDINGS

Gerald Goodman worked as a teacher for the Fairbanks North Star Borough School District from 1989 through March 1, 1996.[1]

---

1. Because we are reviewing a grant of summary judgment, we here set out the facts drawing all permissible inferences in favor of the non-moving ant, Goodman. We draw no conclusions about the substantive merit of Goodman's claim.

Appellee contended at oral argument that the deposition testimony supporting these inferences

During the 1989–90 school year, Goodman began to experience symptoms of Charcot–Marie–Tooth disease, a progressive degeneration of the insulating sheaths covering the nerve fibers of his lower extremities. The disease caused pain in Goodman's feet when he stood or walked for any length of time. Goodman retrained with the State Division of Vocational Rehabilitation, and taught drafting for a year at the Hutchison Career Center.

The classroom design at Hutchison was less aggravating to Goodman's symptoms. Lockers between each of the drafting desks provided Goodman with a place to sit while assisting students, the bathroom and office were closer to his classroom, and the students' drafting desks were lower, alleviating the need to stand while watching students draft. Goodman was involuntarily transferred from Hutchison to Lathrop High School in June 1991.

Goodman's main classroom at Lathrop aggravated his symptoms—the floor was concrete and the drafting desks were high. The hard surface made it painful for Goodman to stand and the high desks forced him to spend more time standing. Goodman's condition deteriorated, forcing him to have surgery on his feet in August 1995. Goodman contacted the school district's Employment and Education Opportunity Coordinator, Elizabeth Schaffhauser, on September 1, 1995. He informed her of his condition and sought accommodations. Goodman returned to school in mid-September, using a wheelchair and teaching on a part-time basis. Goodman resumed full time teaching and stopped using the wheelchair in early October.

Goodman's requested accommodations included lowering the students' drafting desks, padding or carpeting the classroom floors, transferring Goodman to a classroom with carpeted floors, or transferring Goodman from Lathrop to Hutchison. Schaffhauser investigated Goodman's needs and possible accommodations, and met with Goodman and several other people to coordinate the efforts. These meetings and contacts between Schaffhauser and Goodman took place throughout the 1995 Fall semester. The school district eventually gave Goodman a wheeled stool and a small padded mat. The school district continued to pursue accommodations after providing the stool and mat.

Goodman began meeting with an attorney in late September 1995 because he "felt that [he] was being discriminated against." He eventually filed for disability retirement in early December 1995 because he was concerned that the school district was not going to accommodate him. On December 6 and December 15 Goodman spoke with Schaffhauser about the status of the accommodation requests. On December 7, 1995 Goodman filed a grievance against Schaffhauser and the school district, alleging that the school district had failed to provide necessary floor mats.

After winter break, Goodman only returned to school to administer and grade final exams, and to aid the substitute teacher with lesson plans. Although Goodman arranged with James Holt, the principal at Lathrop, for a substitute teacher to teach Goodman's classes, Holt "had agreed to leave [Goodman's] job position open." Goodman used his remaining sick leave and was granted emergency leave. The State of Alaska notified Goodman a few days before March 1, 1996 that it was granting his application for disability retirement. The school district paid Goodman through February 29, 1996, and Goodman's retirement became effective on March 1, 1996.

Goodman filed a complaint against Fairbanks North Star Borough (FNSB) and the school district on February 18, 1998, alleging discrimination based on disability under AS 18.80.220(a)(1). FNSB and the school district moved for summary judgment on statute-of-limitations grounds. The superior court granted the motion for summary judg-

---

was not properly before the court because Goodman had failed to notify the Fairbanks North Star Borough School District and the Fairbanks North Star Borough as required by Alaska Civil Rule 30(f)(3). The record does not support this argument. Goodman filed many pages from his deposition and the deposition of Elizabeth Schaffhauser with his April 9, 1999 opposition to summary judgment. Goodman's April 9, 1999 filings include a notification which listed the pages of the depositions filed before the court and certified that "a true and correct copy of the foregoing document was served by mail" on opposing counsel.

ment, holding that Goodman had failed to file within the two-year statute of limitations.[2] It held that Goodman's cause of action accrued no later than mid-January 1996, when he knew that the school district was not going to provide adequate accommodations. Goodman appeals.

## III. DISCUSSION

### A. Standard of Review

The date when Goodman discovered or should reasonably have discovered that the school district would not provide him with reasonable accommodations presents a question of fact "which cannot ordinarily be determined by the superior court on a motion for summary judgment."[3] If reasonable minds could differ as to the date of discovery, there is a genuine issue of material fact, and summary judgment is inappropriate.[4] All reasonable inferences must be drawn in favor of Goodman, the nonmoving party.[5] On legal issues, we adopt principles of law which are "most persuasive in light of precedent, reason, and policy."[6]

██ Although dismissing a claim for failure to adhere to the statute of limitations is legitimate, it is "not generally favored by the courts."[7] We will not strain either the law or the facts in aid of a statute-of-limitations defense.[8] Statutes of limitations prescribing a relatively short period of time should be construed narrowly.[9]

### B. A Genuine Issue of Material Fact About Whether Goodman's Resignation Was Conditional Precludes Summary Judgment.

The superior court held that Goodman's claim accrued no later than mid-January 1996, and was thus time barred by the two-year statute of limitations. The superior court stated that "Mr. Goodman's testimony indicates that he knew the School district had no intention of considering accommodation after he was on leave." The court reasoned that the latest date when the claim could have accrued was mid-January, "when Mr. Goodman stopped teaching and went on emergency leave with no indication from the School District that accommodations would be made before his retirement." The court concluded that "Mr. Goodman's retirement on March 1, 1996, was not a new failure to accommodate, but rather was a consequence of the School District's earlier failure to accommodate his disability of which Goodman clearly had notice before going on leave in mid-January."

Goodman argues that his cause of action did not accrue until he suffered a compensable harm, when he retired on March 1, 1996.

██ A cause of action for failure to accommodate arises "when the employee receives unequivocal notice of the facts giving rise to his [or her] claim or a reasonable person would know of the facts giving rise to [the] claim."[10]

The facts, viewed in the light most favorable to Goodman, demonstrate that Goodman did not receive unequivocal notice that the school district was refusing to accommodate him until Goodman's application for disability retirement was accepted in late February 1996, and his employment with the district ended. The record supports Goodman's argument that although he filed for disability

2.  See AS 09.10.070(a)(5).

3.  Breck v. Moore, 910 P.2d 599, 605 (Alaska 1996) (quoting Gudenau & Co. v. Sweeney Ins., Inc., 736 P.2d 763, 767 (Alaska 1987)).

4.  See Gudenau, 736 P.2d at 767.

5.  See Bauman v. Day, 892 P.2d 817, 825 (Alaska 1995) (citing Wright v. State, 824 P.2d 718, 720 (Alaska 1992)); Gudenau, 736 P.2d at 767.

6.  Bauman, 892 P.2d at 825 (citing Langdon v. Champion, 745 P.2d 1371, 1372 n. 2 (Alaska 1987)).

7.  Safeco Ins. Co. v. Honeywell, Inc., 639 P.2d 996, 1001 (Alaska 1981).

8.  See id. (quoting Guy F. Atkinson Co. v. State, 66 Wash.2d 570, 403 P.2d 880 (1965)).

9.  See Safeco Ins. Co., 639 P.2d at 1001.

10.  Burfield v. Brown, Moore, & Flint, Inc., 51 F.3d 583, 589 (5th Cir.1995) (interpreting accrual of cause of action under Americans with Disabilities Act) (citation omitted).

retirement in December 1995 and exhausted his leave time in January 1996, he still hoped to receive accommodations that would enable him to continue working. Goodman testified that he did not consider his decision to retire to be irrevocable. He explained in his corrections to his deposition transcript that he considered retirement "as one of my options but not the preferred one." He testified that James Holt, the Lathrop High School principal, "had agreed to leave [his] job position open." Holt's Statement of Disability form, dated December 4, 1995, stated that the school district would retain Goodman and require him to perform his currently assigned teaching duties if Goodman's application for disability were denied and Goodman wished to continue working. We note that while the record permits an inference that Goodman knew in January 1996 that the district had not yet accommodated him, it does not establish beyond dispute that Goodman knew or should have known that the school district would make no further efforts to accommodate him.

The record also supports an inference that the school district did not consider his retirement request to be irrevocable. Goodman notified Schaffhauser on November 21, 1995 that he was applying for disability retirement, and that he would "try to stay off his foot at Christmas and see if there's any improvement." This communication should have informed the school district that although Goodman would be applying for disability retirement, he preferred accommodation, and that his retirement application would be conditional.

The record also permits the inference that Goodman successfully communicated his preference. The school district continued to investigate ways to accommodate Goodman after he filed for retirement. Schaffhauser testified in her deposition that as of December 6, 1995, the school district was still planning to accommodate Goodman, one week after she told Goodman how to apply for disability retirement. When she was asked, "as the EEO officer at that time, 12/6/95 . . . what was your plan to accommodate Mr. Goodman and how had it been implemented?" Schaffhauser testified that "[w]e were

working on getting some floor covering. We had gotten him a stool for him to utilize, and we were looking at the appropriate floor covering for the area that he worked in." Goodman again notified Schaffhauser on December 15 that he was working to complete his application for disability retirement, and that he would go on official leave on January 2. During this conversation, Goodman mentioned filing the grievance. Schaffhauser denied that the school district had done nothing, "referring more to the idea that we were working on getting him carpeting . . . that we showed that we were interested in accommodating through getting him something on the . . . floor." Goodman testified that he filed the grievance to alert the school district of his unhappiness with the status of the accommodations and because he "would like to have been able to keep working."

The record also permits the inference that the parties did not think that Goodman's leave would halt the attempts to accommodate. Schaffhauser testified that in September she checked on how many days of sick leave Goodman had, because "we were just looking at the time that we thought he might be out and—and the time we would have to develop accommodations for him." Leave, at least in September, was contemplated as time for accommodations rather than a termination of the relationship.

It is possible to infer from the testimony that Goodman had decided that the school district was refusing to accommodate him, and that Schaffhauser and Goodman thought that the issue of accommodation was moot because Goodman was retiring. But it is also reasonable to infer that the school district was still investigating possible accommodations, and that Goodman expected either to be accommodated or to be granted his disability retirement. Under this view, the school district first signaled its refusal to accommodate Goodman when his request for disability retirement was accepted in late February, and his employment with the district ended.

■ The school district, arguing that Goodman believed it was discriminating against him in 1995, cites evidence that Goodman consulted a lawyer in September and

testified that he had concluded in November 1995 that the school district was not going to accommodate him. This is evidence that Goodman suspected discrimination as early as November. But it does not establish the absence of any genuine dispute about when Goodman discovered or should have discovered his cause of action. Absent an articulated refusal to accommodate, a failure-to-accommodate claim requires evaluation of omissions rather than overt acts.[11] Although Goodman knew that he had not yet been accommodated, the evidence permits an inference that he did not know or have reason to know that the school district would make no further reasonable accommodation efforts.

The school district did not notify Goodman of any decision not to accommodate, and it continued to make movements toward accommodation. Goodman knew of many of these efforts. Schaffhauser continued to investigate possible accommodations, and her investigations continued at least through December 1995. The school district's use of a substitute teacher through March 1 and Holt's agreement to leave Goodman's position open permit a reasonable mind to find that Goodman did not know or have reason to think that the school district had moved beyond indecision and was now refusing to accommodate his disability. It is not clear from the record when the school district decided to abandon efforts to accommodate Goodman. And it is difficult to conclude as a matter of law that Goodman should have known that the school district was refusing to accommodate him if the school district had not yet decided to refuse further accommodations.

We have held that the date of discovery "cannot ordinarily be determined by the superior court on a motion for summary judgment," and that "[w]here reasonable minds could draw different conclusions as to the date of discovery, a genuine issue of material fact exists and summary judgment must be denied."[12] The record here would permit, but would not compel, a fact finder to find that Goodman did not discover the school district's refusal to accommodate until Goodman's application for disability retirement was accepted in late February 1996, and his employment with the district ended. Retirement was not an inevitable consequence of the January leave of absence or the course of dealings before the school district approved Goodman's retirement application. Goodman's employment relationship with the district ended when the State of Alaska approved his retirement disability retirement application in late February 1996. After that date and given the course of the district's dealings with Goodman, Goodman could not reasonably have believed that the district would make further accommodation efforts. But until that time, the circumstances we have discussed above gave rise to genuine, material fact disputes about whether Goodman should have realized before February 18, 1996 that the district would make no further efforts to accommodate his disability, precluding summary judgment on the statute-of-limitations issue. The school district's failure to notify Goodman of any decision to refuse accommodation precludes summary judgment on this issue.

Given this conclusion, we do not reach Goodman's alternative arguments that his claim was saved by the doctrine of equitable tolling, that some of his causes of action accrued after February, or that he had alleged a continuous violation.

Although genuine fact disputes preclude summary judgment against Goodman on the statute-of-limitations issue, we cannot say as a matter of law that Goodman reasonably could have believed as of February 18, 1996, that the school district had not yet refused to provide further accommodations for his disability. We therefore cannot hold that he must prevail on his argument that the statute of limitations does not bar his claims. On remand the superior court will have to resolve these fact disputes to decide whether

---

11. We express no opinion here about the effect of an employer's lengthy failure to respond to a request for accommodations.

12. *Gudenau,* 736 P.2d at 767 (citations omitted). *But cf. Sopko v. Dowell Schlumberger, Inc.,* 21 P.3d 1265, 1272 (Alaska 2001) (holding that "Sopko had 'sufficient information' to start an inquiry into his cause of action [directly after the incident] even though the full extent of his injury was not revealed until 1995").

Goodman's failure-to-accommodate claims are barred in whole or in part. The court may do this by conducting a preliminary fact hearing to resolve this issue before any trial, or by submitting fact disputes on this issue to the trial finder of fact.

## IV. CONCLUSION

Given these genuine, material fact disputes about the accrual of his cause of action, it was error to grant summary judgment against Goodman. We REVERSE and RE-MAND for further proceedings.